**In re J.J. RE–BAR CORP., INC., Debtor.**

**J.J. Re–Bar Corp., Inc., Appellant,**

v.

**United States of America, Appellee.**

**BAP No. EC–09–1040–DJuBa.**
**Bankruptcy No. 98–21421.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 25, 2009.

Filed Nov. 4, 2009.

**498**

Estela O. Pino, Barbara Peyton, Sacramento, CA, for debtor.

Before: DUNN, JURY and BAUM,[1] Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The appellant, J.J. Re–Bar Corporation, Inc. ("JJ Re–Bar"), appeals the bankruptcy court's denial of its motion 1) to enforce provisions of the order confirming its chapter 11[2] plan and 2) to hold the Internal Revenue Service ("IRS") in contempt for seeking to collect "trust fund" tax liabilities from JJ Re–Bar's officers as "responsible persons." We AFFIRM.

1. Hon. Redfield T. Baum, Sr., Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Unless otherwise indicated, all "Code," chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101–1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23, as the case from which this appeal arises was filed before October 17, 2005, the effective date of most BAPCPA provisions.

## I. FACTUAL BACKGROUND

The facts in this appeal are not in dispute. JJ Re–Bar filed a chapter 11 petition on January 30, 1998. Postpetition, JJ Re–Bar continued to operate its business in chapter 11 as a debtor in possession.

On July 21, 1998, the IRS filed its original proof of claim in JJ Re–Bar's bankruptcy case in the amount of $6,446.28. The IRS filed an amended proof of claim in the amount of $833,269.00 on December 2, 1998.

JJ Re–Bar filed a plan of reorganization ("Plan"), and on December 9, 1998, the bankruptcy court issued an order approving JJ Re–Bar's disclosure statement and fixing a deadline for filing ballots accepting or rejecting the Plan. Pursuant to the order, the hearing on confirmation of the Plan was scheduled for January 19, 1999. The IRS did not object to confirmation of the Plan. The Plan, as amended at the confirmation hearing, was confirmed by order ("Confirmation Order") entered on March 18, 1999. The IRS did not appeal the Confirmation Order, and it is final.

Article X of the Plan, entitled "Discharge of the Debtor," reads as follows:

Upon confirmation, the DEBTOR shall receive, to the fullest extent possible, any and all discharges afforded by the Bankruptcy Code. In addition, the entry of an order confirming this Plan shall constitute a release of any and all claims, causes of action, rights, disputes in existence prior to the confirmation whether known or unknown, liquidated

or unliquidated, fixed or contingent, by any parties against the DEBTOR or claims on which the DEBTOR is the primary obligor. Such parties' sole recourse as to claims against the DEBTOR or on which the DEBTOR is the primary obligor shall be to accept the treatment given to such party under the Plan.

The Order of confirmation shall constitute a permanent stay and permanent injunction prohibiting: 1) any action by any party against the revested DEBTOR, 2) any action by any party against property of the revested DEBTOR, or 3) any action by any party against any party based upon a claim, which existed prior to Confirmation, pursuant to which the DEBTOR is the primary obligor.

Paragraph 10 of the Confirmation Order provides that,

all creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by Article X of the Final Plan of Reorganization Proposed by Debtor are permanently enjoined from instituting or continuing any action or employing any process or engaging in any act to collect on a debt discharged herein and/or engaging in any act prohibited by Article X of the Final Plan.

At the time that the Plan was confirmed, the IRS's claim against JJ Re-Bar was not a final assessment because an audit was being conducted. The Plan provided that JJ Re-Bar would pay the IRS the full amount of its claim within 72 months of the effective date of the Plan, or within 72 months of the assessment date, whichever

was later. When the audit was concluded, the IRS sent a bill to JJ Re-Bar for payroll taxes, fraud penalties and interest. JJ Re-Bar disagreed with the IRS and filed an administrative appeal of the proposed assessment. The administrative appeal was resolved in 2004 through a negotiated settlement. However, apparently, bills reflecting the correct assessments consistent with the settlement were not sent to JJ Re-Bar for several years. The final IRS claim consisted of a priority unsecured claim in the amount of $1,435,083.52, and a general unsecured claim, including a civil fraud penalty, in the amount of $1,675,951.92. The IRS provided JJ Re-Bar with a payment schedule in late 2007. JJ Re-Bar began making payments on the IRS's finally assessed claim pursuant to the confirmed Plan in December 2007 and timely has made all required payments to the IRS under the Plan since that time.

In spite of the settlement between the IRS and JJ Re-Bar and JJ Re-Bar's compliance with its Plan obligations in making payments to the IRS on its agreed claim, the IRS has initiated efforts to assess and collect prepetition and preconfirmation payroll taxes from Joseph J. Skokan and Joseph M. Skokan (collectively, the "Skokans") as "responsible persons" under 28 U.S.C. § 6672. Joseph J. Skokan and his wife founded JJ Re-Bar as a proprietorship business prior to its incorporation, and they are JJ Re-Bar's sole shareholders. Joseph M. Skokan is Joseph J. Skokan's son and currently is the president of JJ Re-Bar. The Skokans are the principal officers of JJ Re-Bar.[3]

---

**3.** In 2002, the United States filed a criminal case against the Skokans for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, resulting from their alleged willful and intentional failure to withhold and account for the full and correct amount of federal income, social security and Medicare taxes from wages paid to JJ Re-Bar employees, and Joseph J. Skokan's alleged willful and intentional failure to report income. The Skokans entered guilty pleas and subsequently were convicted.

JJ Re–Bar advised the IRS that its efforts to collect its claim from the Skokans violated the terms of JJ Re–Bar's confirmed Plan; however, the IRS continued with its efforts to collect against the Skokans "in order to protect [the IRS's] interests should [JJ Re–Bar] default on its payments." On February 8, 2008, JJ Re–Bar filed its "Motion for Enforcement of Order Confirming Final Plan of Reorganization Proposed by Debtor and to Hold the Department of the Treasury/Internal Revenue Service in Contempt for Violation of Order Confirming Final Plan of Reorganization Proposed by Debtor" ("Motion"). The IRS filed its response to the Motion on May 19, 2008.

On January 26, 2009, the bankruptcy court held a hearing on the Motion. The minutes of the hearing included the bankruptcy court's final ruling ("Final Ruling") in favor of the IRS. The Final Ruling was based on two principal conclusions of the bankruptcy court: 1) The Anti–Injunction Act, 26 U.S.C. § 7421(a), prohibits the bankruptcy court from exercising jurisdiction over the IRS's efforts to collect taxes from individuals who are not debtors in bankruptcy. 2) Even if the bankruptcy court had jurisdiction in this case, the assessment and enforcement of "trust fund" tax liabilities against the Skokans as "responsible persons" under 26 U.S.C. § 6672 did not violate the terms of JJ Re–Bar's Plan because JJ Re–Bar was not the "primary obligor" for such liabilities. JJ Re–Bar's obligation to pay employee tax withholdings arises under 26 U.S.C. §§ 3102(a) and 3402(a). Accordingly, the IRS was not seeking to recover a debt covered by the Plan. The bankruptcy court entered its order denying the Motion on January 29, 2009.

JJ Re–Bar filed a timely Notice of Appeal on the same day.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (O), and its retention of jurisdiction in the order confirming the Plan. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the Anti–Injunction Act preclude the bankruptcy court from exercising jurisdiction over the IRS's efforts to collect "trust fund" taxes from the Skokans as "responsible persons" because they were not in bankruptcy?

2. If the bankruptcy court did have jurisdiction, did the bankruptcy court correctly determine that the IRS's collection efforts against the Skokans were not precluded by the terms of JJ Re–Bar's confirmed Plan because JJ Re–Bar was not the "primary obligor" with respect to the Skokans' alleged obligations as "responsible persons" under 26 U.S.C. § 6672?

## IV. STANDARDS OF REVIEW

■ This appeal involves no issues of fact. We review issues of statutory construction and conclusions of law de novo. *Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 802 (9th Cir. BAP 2007), *aff'd*, 577 F.3d 1026 (9th Cir.2009).

## V. DISCUSSION

■ This appeal concerns acts of the IRS to collect unpaid employee withholding "trust fund" taxes from the Skokans while JJ Re–Bar is making installment payments on essentially the same obligations pursuant to the Plan. As noted by this Panel in *United States v. Condel, Inc. (In re Condel, Inc.)*, 91 B.R. 79, 80 n. 1 (9th Cir. BAP 1988):

"Trust fund taxes" are those income and social security taxes that an employer is required to withhold from the wages and

salaries paid to its employees. They are so named since they are directed to be held "in trust for the United States." 26 U.S.C. § 7501.

The employer, JJ Re–Bar in this case, is directly liable for payment of the withheld trust fund taxes. *See* 26 U.S.C. §§ 3102 and 3402. However, a "separate and distinct" remedy for collecting delinquent trust fund taxes is provided by 26 U.S.C. § 6672. *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548–49 (11th Cir.1986) ("It is well established that the liability imposed under section 6672 is separate and distinct from that imposed on the employer under sections 3102 and 3402 of the Internal Revenue Code." (citations omitted)).

Section 6672(a) provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

 Although the "responsible person" liability provided for in § 6672(a) is described as a "penalty," it

> is not penal in nature, *[Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir. 1970)], but is " 'simply a means of ensuring that the tax is paid.' " [*Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970)] (quoting *Botta v. Scanlon*, 314 F.2d 392, 393 (2d Cir.1963)). The pri-

mary purpose of the section is thus the protection of government revenue. *Newsome*, 431 F.2d at 745 (citations omitted).

*United States v. Huckabee Auto Co.*, 783 F.2d at 1548. Consistent with that purpose, it is IRS policy to collect the subject liability only once. *See United States v. Sotelo*, 436 U.S. 268, 279 n. 12, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978).

Initially, the bankruptcy court held that the Anti–Injunction Act, 26 U.S.C. § 7421(a), precluded the bankruptcy court from exercising jurisdiction over the IRS's efforts to collect trust fund taxes from the Skokans because they were not debtors in bankruptcy, citing *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*, 895 F.2d 1277 (9th Cir.1990).[4] The Anti–Injunction Act provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

In *American Bicycle Ass'n*, the Ninth Circuit held that the Anti–Injunction Act precluded a bankruptcy court from enjoining the collection of trust fund taxes from the responsible officer of a debtor corporation. 895 F.2d at 1279–80. American Bicycle Association's ("American Bicycle") confirmed chapter 11 plan provided that its unpaid federal tax obligations would be paid in full in installments over time, and nothing in the record indicated that American Bicycle had defaulted on its plan obligations to the IRS. *Id.* at 1278. Nevertheless, the IRS notified Mr. Anderson, American Bicycle's secretary-treasurer,

---

**4.** The bankruptcy court actually first held that the United States Department of the Treasury and IRS officer Bennett individually were protected by sovereign immunity from suit and/or motion for injunctive relief in the matter before the bankruptcy court. These holdings have not been appealed and are not before us.

that a penalty would be assessed against him personally as a "responsible officer" for a portion of the federal taxes owed by American Bicycle. American Bicycle's confirmed plan did not purport to release Mr. Anderson from such liabilities, but American Bicycle and Mr. Anderson filed a complaint before the bankruptcy court seeking to enjoin the IRS under § 105(a)[5] from collecting the taxes from Mr. Anderson on the ground that such collection would impair Mr. Anderson's ability to make capital contributions to American Bicycle necessary to fund its plan.

The bankruptcy court in *American Bicycle Ass'n*, taking the plaintiffs' allegations as true, issued a preliminary injunction against the IRS, but recognizing that authorities diverged on the issue of the bankruptcy court's authority to issue such an injunction, granted the IRS leave to appeal the preliminary injunction order. On appeal, the district court reversed, and the Ninth Circuit affirmed the district court's decision, concluding that the "specific and unequivocal" provisions of the Anti–Injunction Act overrode the general grant of authority in § 105(a). *Id.* at 1279–80. *See also In re Condel, Inc.*, 91 B.R. at 82 ("Allowing a debtor to avoid or forestall the tax liabilities of its officers by use of a Plan would violate the policy of the Anti–Injunction Act as readily as allowing the debtor to avoid such liability by filing a suit for injunctive relief.").

▆ JJ Re–Bar disputes the relevance of *American Bicycle Ass'n* in the factual and procedural context of this case: The issue before the bankruptcy court here was not whether an injunction should issue against the IRS, but whether the injunction contained in the Confirmation Order that had been final for years should be enforced against the IRS.

Section 1141(a) provides, in relevant part, that "the provisions of a confirmed plan bind ... any creditor ... whether or not the claim ... of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." JJ Re–Bar argues that the terms of a chapter 11 plan that has been confirmed by a final order are binding in spite of the fact that terms of the plan otherwise are contrary to law, relying on *Trulis v. Barton*, 107 F.3d 685 (9th Cir.1995). In *Trulis v. Barton*, the Ninth Circuit considered the effects of a chapter 11 plan that included release provisions covering nondebtor third parties asserted to be contrary to § 524(e),[6] where no concerned party had appealed the confirmation order. *Id.* at 689. The Ninth Circuit held that,

> Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.

*Id.* at 691. *See also Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir.2008), *cert. granted*, ─── U.S. ───, 129 S.Ct. 2791, 174 L.Ed.2d 289 (2009); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999) ("This court has recognized the finality of confirmation orders even if

---

**5.** Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

**6.** Section 524(e) provides, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such

debt." Arguably, the same issue could have been raised by the IRS before the Plan was confirmed in this case. However, neither of the parties has raised any issue with respect to illegality of the release and injunction provisions included in the Plan in light of § 524(e) before us (or before the bankruptcy court for that matter) in this appeal.

the confirmed bankruptcy plan contains illegal provisions.") (citing *Trulis v. Barton*, 107 F.3d at 691).

JJ Re–Bar argues that the Plan provided for a release of any and all claims upon which JJ Re–Bar was the "primary obligor," with the sole recourse for creditors with such claims being to rely on their treatment under the Plan. The Plan further provided for a "permanent injunction" against such creditors taking any action against third parties to collect such claims. The IRS did not object to JJ Re–Bar's Plan, and it did not appeal the Confirmation Order. Accordingly, JJ Re–Bar argues that the IRS is bound by the Plan provisions and cannot undertake to assess and collect the subject trust fund taxes from the Skokans.

In its Final Ruling, the bankruptcy court agreed with JJ Re–Bar's *Trulis v. Barton* argument that once a chapter 11 plan has been confirmed, it is binding on all interested parties. However, it held that even if it had jurisdiction, and in light of the Ninth Circuit's holding in *Trulis v. Barton*, IRS enforcement of trust fund tax liabilities against the Skokans under 26 U.S.C. § 6672 did not violate the proscriptions of JJ Re–Bar's confirmed Plan because JJ Re–Bar was not the "primary obligor" with respect to such liabilities. The Skokans, as "responsible persons," were the primary obligors under 26 U.S.C. § 6672. We agree for the following reasons.

■■■■ It is true that the *Trulis v. Barton* line of authority in the Ninth Circuit stands for the proposition that once a bankruptcy plan is confirmed, if an objection is not preserved through an appeal and the confirmation order becomes final, the terms of the plan have the same preclusive effect as a final judgment. 107 F.3d at 691; *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d at 1199; *In re*

*Pardee*, 193 F.3d at 1086–87. It is equally true, however, that for a plan term to have such preclusive effect, it must be clear. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d at 1201, which states:

> [I]t's not clear why letting the creditor know, in *plain terms*, that its rights will be impaired by the proposed plan—and then leaving it up to the creditor and his lawyers to figure out what objections or remedies are available—doesn't satisfy the Tenth Circuit's "heart of the … notice" standard. (emphasis added);

*In re Pardee*, 193 F.3d at 1085–86, includes:

> The Pardees' plan contained a provision that *expressly purported to discharge the post-petition interest on their student loan debt* and relieve them of liability for the post-petition interest. The Pardees placed language in their plan that, if confirmed, *would clearly have a negative impact on Great Lakes' ability to collect postpetition interest.* (emphasis added);

*Trulis v. Barton*, 107 F.3d at 691, states:

> The release provisions and the bankruptcy court order *expressly apply* to the same parties and claims as the present suit. The bankruptcy court order confirming the Joint Plan *clearly stated* that members of each class who elected to become members of the new club, which each plaintiff in this case did, release all claims against the Berg Defendants. (emphasis added).

For example, the chapter 13 plan in the *Pardee* case provided as follows with respect to the Pardees' student loan debt:

e. Education Loan(s): The Debtor has two separate obligations for their student loans which are as follows:

(1) …

(2) *Great Lakes Higher Education,* 2401 International Way, Madison, WI 53704 in the amount of $26,235.00. This obligation was incurred by Robert McKnight Pardee and [is] in default. Great Lakes Education shall be paid through the Plan and *Great Lakes Higher Education shall receive the total amount of $26,235.00 for its claim and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the Plan.* (emphasis in original).

*Pardee,* 193 F.3d at 1086 n. 5.

In contrast, the relevant terms of JJ Re–Bar's Plan provide that:

[T]he entry of an order confirming this Plan shall constitute a release of any and all claims ... on which the DEBTOR is the primary obligor. Such parties' sole recourse as to claims ... on which the DEBTOR is the primary obligor shall be to accept the treatment given to such party under the Plan.

...

The Order of confirmation shall constitute a permanent stay and permanent injunction prohibiting: ... 3) any action by any party against any party based upon a claim, which existed prior to Confirmation, pursuant to which the DEBTOR is the primary obligor.

The Confirmation Order only adds that,

all creditors whose debts are discharged by this order ... are permanently enjoined from instituting or continuing any action or employing any process or engaging in any act to collect on a debt discharged herein and/or engaging in any act prohibited by Article X of the Final Plan.

There is no specific reference to a release or discharge of IRS claims either in the Plan or in the Confirmation Order. There certainly is no "clear" or express provision in the Plan or Confirmation Order purporting to enjoin the IRS from pursuing collection actions for employee payroll withholding or trust fund taxes against "responsible persons" under 26 U.S.C. § 6672. In fact, there is no reference in the subject provisions of the Plan and the Confirmation Order to the IRS at all, in spite of the fact that the amended IRS claim for $833,269.00 in tax liabilities meant that the IRS claim undoubtedly represented a very material concern in the case. As the bankruptcy court noted at the hearing on the Motion, "The reason this language is so cute, is you were dancing, or whoever drafted this, was dancing around the statutory prohibition against doing this."

In support of its argument that use of the term "primary obligor" in the release of claims and injunction provisions of the Plan is clear enough to bind the IRS, JJ Re–Bar cites two bankruptcy court decisions from outside the Ninth Circuit. In *In re Greenberg,* 105 B.R. 691 (Bankr. M.D.Fla.1989), the bankruptcy court's characterization of claims for unpaid payroll taxes as the "primary obligations" of two dental services corporations but only "secondary obligations" of the individual debtors under 26 U.S.C. § 6672 is purely dicta in a case dealing with the appropriate allocation of chapter 11 debtors' payments on tax claims under their plan of reorganization. *Id.* at 692, 696–97.

*In re Fiesole Trading Corp.,* 315 B.R. 198 (Bankr.D.Mass.2004), dealt with the question of whether "responsible persons" who paid trust fund tax liabilities were entitled to be subrogated to the claim of the IRS in the chapter 7 case of a corporate debtor under § 509. Although the *Fiesole* bankruptcy court's finding that "the corporate Debtor is primarily liable for the unpaid Trust Fund taxes, while the liability of Movants as responsible individ-

uals is secondary to the underlying tax obligation" (*id.* at 207) was more central to its holdings than in *Greenberg,* the *Fiesole* court recognized that the obligations of employers and "responsible persons" to pay trust fund tax liabilities arise from different sources. *Id.* at 206. The *Fiesole* court further acknowledged the existence of contrary authorities concluding that "responsible persons" who pay trust fund tax liabilities may not be entitled to subrogation rights. *Id.* at 207. *See, e.g., In re Barnes,* 304 B.R. 489, 492 (Bankr.N.D.Ala.2004)("subrogation is not available to a party who satisfies an obligation for which he is primarily liable"); *Mason v. Pa. Dept. of Revenue (In re Davis),* 145 B.R. 499 (Bankr.W.D.Pa.1992); *Patterson v. Yeargin (In re Yeargin),* 116 B.R. 621, 622–23 (Bankr.M.D.Tenn.1990), which states:

> Payment of a § 6672 tax penalty does not give rise to a right of subrogation of one responsible person against another. Section 6672 liability is personal and separate from the corporation's debt. (citations omitted) Although the IRS has discretion to assess the 100% penalty against more than one responsible person until all withholding taxes are satisfied, a responsible person does not have a right of contribution or indemnification from either the employer or another responsible person. (citations omitted) Here, Patterson has not paid the liability of another, he has only discharged the tax penalty for which he was *primarily* liable. (emphasis added);

*In re FJS Tool & Mfg. Co., Inc.,* 88 B.R. 866, 870–71 (Bankr.N.D.Ill.1988) states:

> A responsible officer's personal liability under 26 U.S.C. § 6672 is separate and distinct from the corporation's debt. (citation omitted) ... Spencer is not an "innocent party"; he is stipulated to be a responsible officer under 26 U.S.C.

§ 6672 and therefore he was responsible for the unlawful corporate use of taxes withheld from debtor's employees. The small corporate debtor was not a "wrongdoer"; it was the inanimate pawn of its responsible officer who was its president, Spencer;

*and Ridge v. Smothers (In re Smothers),* 60 B.R. 733 (Bankr.W.D.Ky.1986).

 Section 6672 does not provide that responsible persons will not be pursued for collection of trust fund taxes until efforts to collect from the employer have been exhausted. *Abramson v. United States,* 39 B.R. 237, 239 (E.D.N.Y.1984) ("Cases on point firmly reject a hierarchical system wherein the IRS must first pursue the corporation, usually in the Bankruptcy Court, to obtain taxes the corporation's officers are separately obligated to pay under § 6672." (citations omitted)). Responsible persons are liable under § 6672 for the payment of unpaid trust fund taxes *primarily and as principals.* The obligations of employers to withhold and pay trust fund taxes are certainly related to the obligations of "responsible persons" to make sure that those taxes are paid, but these obligations can be separately and independently pursued. As the review of authorities above indicates, there is no unanimity of opinion outside the Ninth Circuit that the obligation of the employer is "primary," and the obligation of "responsible persons" is purely "secondary." In fact, the majority view appears to be that the obligation of "responsible persons" to pay trust fund taxes is a primary liability. We have not been able to find any opinion of a court within the Ninth Circuit that has taken a position on this issue prior to the Final Ruling of the bankruptcy court in this case.

For reasons about which we could speculate but that are not clear from the record before us, JJ Re–Bar chose to draft its Plan provisions dealing with releases of

claims and the postconfirmation injunction against collection of discharged claims in general terms that did not state clearly that the IRS's claim would be affected by those provisions, and if so, how. The burden of that lack of clarity appropriately falls on JJ Re–Bar and the Skokans. We agree with the bankruptcy court that JJ Re–Bar was too "cute," or at least, too cryptic in drafting its Plan provisions. The subject Plan provisions did not provide adequate notice to the IRS of their purported effects. In these circumstances, the bankruptcy court correctly concluded that it was not appropriate for it to enjoin the IRS's efforts to collect unpaid trust fund taxes from the Skokans.

## VI. CONCLUSION

Based on the foregoing analysis of authorities in light of the undisputed factual record before us in this appeal, we conclude as a matter of law that the bankruptcy court did not err in denying the Motion. Accordingly, we AFFIRM.