In re Sonjia May GONZALES, Debtor.

No. 6:13–bk–11471–MJ.

United States Bankruptcy Court,
C.D. California,
Riverside Division.

Heard March 24, 2014.

Signed April 9, 2014.

Lisa H. Robinson, Stephen R. Wade,
Law Offices of John F Brady & Associ-

ates, San Diego, CA, John F. Brady, San Diego, CA, for Debtor.

## MEMORANDUM OF DECISION RE MOTION FOR CLARIFICATION OF CHAPTER 13 CONFIRMATION ORDER

MEREDITH A. JURY, Bankruptcy Judge.

In January 2007, state court litigation (the Litigation) commenced between the Estate of Erin Elizabeth Wilson (the Estate) and Susanne Christensen (Christensen) as plaintiffs (referred to collectively herein as Movants) and Debtor Sonja May Gonzales (Debtor), Clifford Brace (Brace) and others regarding title to certain real property in Apple Valley, California (the Real Property). Movants alleged that Debtor and Brace had fraudulently absconded with real and personal property of the Estate after Erin Wilson died based on a fraudulent scheme and sought to quiet title to the Real Property in the Estate. At the time the Litigation commenced and continuing to the present date the Real Property is titled in Debtor's name.

The Litigation has taken a remarkably slow path to resolution because of the incarceration of Brace and three different bankruptcy proceedings filed by Debtor. In the third such bankruptcy proceeding, this Court entered a chapter 13 confirmation order, confirming a plan proposed by Debtor on the mandatory form of the Central District Bankruptcy Court. Based on the effect of confirmation of the plan and the provisions of § 1327(b)[1], Debtor filed a

motion for judgment on the pleadings in the Litigation. Debtor asserted that the confirmation of the chapter 13 plan and the revesting language of § 1327(b) (as explained more fully below, the revesting caused by this section is delayed until plan completion by language in the mandatory plan form) created a preclusive ruling by the bankruptcy court that Debtor owned the Real Property and that judgment for Debtor on the quiet title issue was mandated.

Debtor's interpretation of the effect of the confirmation order and § 1327(b) is wrong. Nothing in the chapter 13 plan confirmation process in this case nor the revesting language contained in the plan and in § 1327(b) adjudicates title to the Real Property. Therefore, the order confirming the plan has no preclusive effect on the issues in the Litigation. The state court may proceed to resolve that issue based on a forthcoming order of this court, founded on the reasoning below.

## 1. FACTUAL AND PROCEDURE BACKGROUND

In 2007 the Litigation was commenced, alleging wrong deeds by Debtor and Brace which had occurred primarily before Erin Wilson died in 2006. The current iteration of the complaint (Second Amended) alleges that through a complex fraudulent and criminal scheme Brace had used the confidence and trust placed in him by Wilson and her daughter Christensen, which he had curried for years, to cause the title to the Real Property to be vested in Debtor.[2] With regard to Debtor, the Litigation now

---

**1.** Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

**2.** This summary of the litigation is drawn from the Second Amended Complaint filed in

Case No. VCVVS 044885, Superior Court of California, County of San Bernardino, on August 17, 2011, of which this Court takes judicial notice. Any interpretation here of the Litigation is this Court's brief summary only and should not be construed as a comprehensive summary.

seeks only to quiet title to the Real Property in the Estate. The Litigation was abated from 2008 to 2010 due to criminal proceedings against Debtor and Brace and Brace's eventual incarceration.

On September 17, 2010, Debtor filed a chapter 7 case in this Court, which created an automatic stay preventing the Litigation from proceeding. Debtor listed the Real Property in Schedule A and her state court attorneys advised the state court of the stay. The chapter 7 proceeded unremarkably to discharge, which was entered on January 3, 2011, and close on January 10, 2011. In May 2012, Debtor caused the chapter 7 case to be reopened and in June 2012 she filed an Order to Show Cause Re Contempt For Violation of the Discharge Injunction, asserting that the Estate, Christensen, and numerous attorneys who had represented their interests were violating the discharge injunction by continuing to pursue the Litigation. After full briefing by the parties and multiple hearings, this Court denied the contempt. It found that the only relief sought against Debtor was in rem, quiet title to the Real Property, not personal liability which would have been affected by the discharge injunction. The order denying contempt was entered on September 10, 2012, and the chapter 7 reclosed on October 24, 2012.

To further delay the litigation, on December 3, 2012, the Debtor, pro se, filed a chapter 13 case in this Court. She again listed the Real Property in Schedule A and her plan purported to pay a small arrearage on a trust deed on that property in the name of one of Brace's aliases (as alleged in the Second Amended Complaint). Otherwise, the plan did not address any claim or interest of the Estate or Christensen. However, the only parties on her service list were professionals representing the Estate and Christensen. Debtor did not appear at the confirmation hearing on January 14, 2013, but the trustee represented she had appeared at the morning creditor's meeting. The trustee noted the plan had not been served and that the "rental property" was vacant and therefore had negative cash flow.[3] The trustee requested the case be dismissed without a bar to refiling and the Court entered an order dismissing the case on January 15, 2013. Nothing that occurred at this confirmation hearing alerted the Court that this was the same debtor Gonzales who had brought the unsuccessful contempt proceeding. Since Movants had not been served, they had no opportunity to participate at the hearing.

With the litigation moving toward trial, Debtor again filed a chapter 13 case on January 28, 2013, this time with experienced chapter 13 counsel. Her attorneys recognized that because a prior chapter 13 had been filed and dismissed within a year of this filing, under the provisions of § 362(c)(3) the automatic stay would expire after 30 days, unless extended for cause by the Court. They promptly filed a motion to extend the stay and noticed it for regular hearing. Having received notice, one of the representatives of the Estate appeared at the hearing and reminded the Court of the contempt proceeding in the prior chapter 7. At this point, the Court recognized this was the same Debtor Gonzales and inquired of Debtor's counsel what she was trying to accomplish with the chapter 13. Debtor's counsel responded that she only knew of the arrearage on a first trust deed and had been advised by Debtor that this creditor was foreclosing, a legitimate reason to file a chapter 13 and

---

**3.** Since the only real property in Schedule A was the Real Property, the Court assumes the trustee was referring to that property as "rental property" because the Debtor had characterized it as such at the creditor's meeting.

cure an arrearage through the plan.[4] The Court denied the extension of the automatic stay, finding that the quiet title action must proceed in state court and opining that there was really nothing to reorganize in a chapter 13 until title to the Real Property was resolved there.

Despite this admonition from the Court and the absence of any further stay, this case proceeded to confirmation on March 11, 2013, based on the trustee's recommendation and without hearing.[5] The confirmed plan cured the same small arrearage to the purported first trust deed, paid attorney's fees, and paid less than $1000 of unsecured debt, requiring a plan payment of $160 per month.

## 2. MOTION FOR CLARIFICATION

on December 13, 2013, Debtor's attorneys in the Litigation filed a motion for judgment on the pleadings in the state court, asserting the plan confirmation had claim preclusive effect [6] on title to the Real Property.[7] The moving papers initially relied only on the argument that Debtor had listed the Real Property in Schedule A and the plan had been confirmed; therefore, she asserted the provisions of § 1327 applied such that the order confirming the plan was claim preclusive on title to the Real Property, determining that Movants had no interest in the Real Property. Af-

ter multiple rounds of briefing, the state court stayed the proceedings while Movants sought clarification from this Court on the effect of its confirmation order on the Litigation. One of the issues raised in state court was the effect of the language in the plan which delayed the revesting of property in Debtor from the time of plan confirmation until discharge or dismissal.

Seeking the clarification which the state court sought, Movants filed this Motion for Clarification of Chapter 13 Plan.[8] Debtor's responsive papers first assert that the Clarification Motion is inappropriate because, rather than asking for "clarification" of the order, it asks the Court to determine the effect of the confirmation order on the Litigation. Debtor contends the Court lacks the authority to make such a ruling. She then argues, as in state court, that the confirmation of the plan is a preclusive ruling on title to the Real Property based on § 1327(b). The court will address these arguments in turn.

### A. Authority to Interpret Own Order

■ Bankruptcy court's have always been empowered to interpret and enforce their own orders. In *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) the Supreme Court upheld the bankruptcy court's jurisdiction to enter a "clarifying

---

4. The Court only learned later, after inspecting the complaint in the Litigation, that the holder of the first trust deed was an alias of Brace.

5. It is normal procedure in this Division that when a plan appears to be in order, service is correct, and no creditors object, the trustee may recommend confirmation without hearing and place the confirmation on the "consent calendar." That occurred in this case.

6. Debtor's motion refers to the term res judicata. This court shall use the currently accepted term in federal courts of claim preclusion.

7. The Court takes judicial notice of the pleadings filed in Case No. VCVVS 044885, including those filed in conjunction with the motion for judgment on the pleadings. The court refers to them only to restate the allegations and arguments made in those pleadings.

8. Prior to filing the clarification motion, on January 21, 2014, movants filed an adversary proceeding in this court, seeking to quiet title to the Real Property in the Estate. This case is duplicative of the state court litigation on this issue and will be dismissed by this Court once the Clarification Order is entered.

order," interpreting the scope of an injunction contained in a prior order confirming a chapter 11 plan entered in 1986 because the bankruptcy court "plainly had jurisdiction to interpret and enforce its own orders." More recently, in *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013), the Ninth Circuit opined that the ancillary jurisdiction of a bankruptcy court empowered it to interpret its prior orders when the issue before the court was the impact of a chapter 11 plan on subsequent action initiated by the California Franchise Tax Board against individual partners of the chapter 11 debtor.

Additional authority for this Court to interpret the impact of its orders is found in § 105(a), which allows this Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. The scope of an order confirming a chapter 13 plan falls within this broad power. Determining the extent a confirmation order effects creditors or interested parties in the case certainly falls under the auspices of § 105(a).

As Movant's note, whether the motion is called a "clarification" motion or a motion to "determine the effect of the order" is of no import. Both the Supreme Court and the Ninth Circuit use the term "interpret" when speaking of this Court's power. Finally, if not this Court, which court would be tasked to interpret the effect of this confirmation order on the Litigation? The state court was clearly stymied, since it required Movants to return to this Court to determine the impact of the confirmation order on the case before it.

The Court has the power to decide this issue.

### B. Limits on Preclusive Effect of Plan Confirmation

The premise of Debtor's claim preclusion argument is that under the provisions of § 1327(b) and (c), when property is "revested" in the Debtor, it is shed of any claims or interests which might have been asserted against the Debtor. This argument misunderstands the meaning of "revesting" as well as the preclusive effect of a confirmed chapter 13 plan.

Section 1327 provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirming of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Surprisingly, there is very little case law discussing the meaning and impact of the vesting (actually revesting) of property from the estate into a debtor upon plan confirmation, something which occurs by statute in both chapter 13 and chapter 11 proceedings. To understand the meaning, one must consider how the bankruptcy estate is created and its role in a bankruptcy proceeding.

The commencement of a case under any chapter creates an estate as defined in § 541(a), which includes all legal or equitable interests of the debtor in property as of the commencement of the case. Section 1306(a) expands the estate in a chapter 13 to include not only § 541(a) property but also property acquired while the case is pending and before it is closed, dismissed or converted to another chapter. Under

these provisions, read together, whatever interests the debtor had in real or personal property on the petition date becomes property of the chapter 13 estate, as well as anything the debtor acquires while the chapter 13 is pending. A bankruptcy estate is considered a separate entity from the debtor and enjoys certain protections, such as the automatic stay of § 362(a).[9]

When a reorganization plan is confirmed in a chapter 13 case, unless the court orders otherwise, the property of the estate revests in the debtor under § 1327(b).[10] In the Central District of California, the court "has ordered otherwise." Its mandatory chapter 13 plan form contains the following standard language:

VI REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without a discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law....

As quoted above, this plan language also alters subsection (c) to provide that when revestment does occur, the property is still subject to all liens and encumbrances except those specifically avoided by order or operation of law. Therefore, even if Debtor's argument that her confirmed plan had

preclusive effect against Movant's asserted interest in the Real Property had merit, that effect would not come into play until she completed the plan and the case was discharged or closed without discharge. Moreover, when the Real Property did revest in her, it would still be subject to all liens and encumbrances not specifically avoided.

Even without the provision of the mandatory plan which may override § 1327(c) [11], it is useful to understand how revesting has been defined in Ninth Circuit case law. As mentioned above, this case law is sparse and this Court has found no case which analyzes the meaning of vesting or revesting in § 1327. However, that term has been analyzed when it is used in § 349(b)(3) [12] which talks about the effect of dismissal of a case. In *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1414 (9th Cir.1985), in speaking of what happened to ownership of the Nashs' property after their chapter 13 case was dismissed, the court looked at the legislative history to determine the meaning of revesting:

The legislative history of § 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S.Rep. No. 989, 95th Cong., 2d Sess. 49, 1978 U.S.C.C.A.N. 5787, 5835.

---

9. Subsections (2), (3), and (4) apply specifically to the estate.

10. Whether an estate continues to exist after property revests is open to question in the Ninth Circuit and is of no consequence in this case. *See In re Jones,* 657 F.3d 921 (9th Cir.2011).

11. Under § 1327(c) the debtor receives property free and clear of any lien or interest of "any creditor provided for by the plan." So,

its impact is limited to creditors' rights addressed in the plan.

12. § 349(b) provides:
    Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
    . . .
    (3) revests the property of the estate in the entity in which such property vested immediately before the commencement of the case under this title.

■ This meaning has been cited with favor in *In re Jones*, 657 F.3d 921, 928 (9th Cir.2011) when speaking of the revesting of property in the debtor after a chapter 13 plan was confirmed, applying the same meaning to the words in § 1327. Therefore, when the Real Property revests in Debtor here after she completes her plan (or the case is dismissed), she would take whatever property rights she had in the property when the case commenced. Unless her confirmed chapter 13 plan, or some other proceeding which occurred while under the bankruptcy court jurisdiction, affected title, she retains the Real Property subject to any prepetition claims of Movants.

On this background, the Court now turns to whether the chapter 13 plan of Debtor here decided anything preclusively with regard to Movant's claimed interest in the Real Property.[13] The quick and simple answer is no. Debtor's uncomplicated chapter 13 plan makes a monthly payment of $160 to the trustee to be distributed to the small arrearage on the purported first trust deed, to her minimal unsecured debt, and to trustee and attorney's fees. Nothing in the plan speaks of avoiding a lien or interest of Movants in the Real Property. The only direct provision of the plan cited by Debtor on this issue is the delayed revesting provision, Part VI.

■ The extent to which a confirmed chapter 13 plan can be said to have claim preclusive effect was addressed definitively in *Brawders v. County of Ventura (In re Brawders)*, 503 F.3d 856 (9th Cir.2007), which adopted the prior Ninth Circuit BAP opinion in the same case. Both courts recognized that "[i]n rare instances, the res judicata [claim preclusion] effect of a confirmed Chapter 13 plan can effectively avoid a creditor's lien or modify its in rem rights even if there is no valid legal basis for doing so, provided that the plan does so explicitly and due process considerations are met." *Id.* at 863.[14] But the appellate courts spoke on the "major limitations" to this general proposition. A key limitation was that the plan had to clearly state its intended effect on a given issue; any ambiguity would be interpreted against the debtor:

> [A]ny ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the parties' expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory or constitution scheme. *Id.* at 867.

A further limitation is that due process requires adequate notice and procedures. *Id.* at 867 (confirmation has no preclusive effect on matters requiring adversary proceeding, or where plan does not give adequate notice of proposed treatment). The courts in *Brawders* were faced with whether a confirmed chapter 13 plan which paid a sum certain on secured real property taxes in Class 2 (which was insufficient to pay the full balance due under the county

---

13. Debtor makes no claim that anything other than plan confirmation occurred in her case regarding the Real Property and the docket reflects that nothing else initiated by Debtor did.

14. The legal authority for this statement by the BAP at the time was *Great Lakes Higher Educ. Corp v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir.1999) and *Espinosa v. United Student Aid Funds (In re Espinosa)*, 553 F.3d 1193 (9th Cir.2008). The United State Supreme Court has blessed this concept in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

tax lien) precluded the county from enforcing its right to collect the unpaid balance after that plan completed. The bankruptcy court had granted summary judgment for the debtor, finding that when the property revested in the debtor after plan completion, § 1327(c) and the plan provision that the Class 2 claimants had been paid in full meant that the debtor regained rights to the property free and clear of the county's tax lien. *Id.* at 859. Because the plan did not explicitly state it was reducing the county's tax lien to the amount to be paid or otherwise give notice to the county that its lien rights were to be effected, the BAP reversed this decision, affirmed by the Ninth Circuit. *Id.* at 873.

Similar limitations to the preclusive effect of a confirmed plan have been reiterated by the Ninth Circuit BAP in *In re J.J. Re–Bar Corp., Inc.*, 420 B.R. 496 (9th Cir. BAP 2009), speaking of the effect of a confirmed chapter 11 plan. The debtor in *J.J. Re–Bar* had confirmed a plan which provided an installment payment on a debt for employee withholding taxes to the Internal Revenue Service; general language in the confirmation order enjoined creditors from pursuing claims against third parties when the claim was addressed by the plan. *Id.* at 500. When the IRS started collection activities on the "trust fund" obligation against the debtor's insiders, the debtor argued the permanent injunction of the plan precluded such action. *Id.* at 503. In denying the relief sought by the debtor, the bankruptcy court and the BAP said that for a plan term to be preclusive, it must be clear and its proposed effect on the creditor must be explicit. *Id.* The general language of the *J.J. Re–Bar* plan failed this test. *Id.*

■ Unlike *Brawders* and *J.J.Re–Bar*, Debtor's plan did not have even general provisions which purported to effect Movant's claimed interest in the Real Property. Other than the general delayed revesting provision of Part VI, nothing in the plan could even be construed to effect Movant's rights. Therefore, since revesting the Real Property in Debtor gives her the property in the same legal condition as at the commencement of the case, the plan has no preclusive effect on the quiet title action now pending in state court. That action should proceed to determine ownership rights to the Real Property.

## 3. CONCLUSION

For the foregoing reasons, this Court interprets and clarifies the effect of its order confirming Debtor's chapter 13 plan to have no preclusive effect on title to the Real Property. Whatever claims Movants had to the Real Property when this case commenced are preserved, to be litigated to conclusion in the state court. The Court will enter an appropriate order.