**In re Henry Floyd SMITH, Jr. and Krongthong Smith, Debtors.**

**No. 01–91028.**

United States Bankruptcy Court,
E.D. Texas,
Lufkin Division.

Oct. 29, 2001.

Tony L. Chauveaux, Crutchfield, DeCordova & Chauveaux, P.C., Beaumont, TX, for Bruce R. McAllister and Shirley McAllister.

W. David Stephens, Lufkin, TX, for Henry F. Smith, Jr. and Krongthong Smith.

---

## MEMORANDUM OF DECISION

BILL G. PARKER, Bankruptcy Judge.

This matter came before the Court upon consolidated hearing of dual motions by the Creditor–Purchasers, Bruce and Shirley McAllister ("Purchasers"), through which Purchasers seek to obtain relief from the automatic stay to enforce a prepetition judicial decree mandating the specific performance of a certain land-sale contract by the Debtors, Henry Floyd Smith, Jr., and Krongthong Smith ("Debtors"), as well as to preclude any rejection of that contract by the Debtors. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

### Factual And Procedural Background

The facts in this case are not seriously disputed. On or about October 10, 1998, Purchasers and Debtors entered into an earnest money contract by which Debtors agreed to sell to the Purchasers certain real property identified as Lot 5, Block 1, of Emerald Bay Subdivision in Polk County, Texas (the "subject property") which constituted the Debtors' homestead. The transaction was set for a formal closing on Monday, October 26, 1998, at the offices of Livingston Abstract Company in Livingston, Texas. Prior to the closing date, the Debtors informed the listing broker that they were unwilling to consummate the sale as required by the earnest money contract. Purchasers appeared at the closing at the appropriate time with certified funds to complete the purchase in accordance with the terms of the earnest money contract; however, the Debtors failed to appear for the closing.

After the putative closing, Purchasers brought suit against the Debtors in the 411th Judicial District Court of Polk County, Texas. On April 4, 2001, that court entered an order of specific performance requiring the Debtors to convey the subject property to the Purchasers. However, prior to the actual conveyance of the property pursuant to that decree or the entry of any other enforcement order by the state district court, the Debtors, on May 14, 2001, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this court.

Prior to the scheduled confirmation hearing of the Debtors' proposed Chapter 13 plan,[2] the Purchasers have brought these motions to forbid the Debtors' rejection of the earnest money contract and to obtain relief from the automatic stay so that they might return to the state district court for appropriate action to enforce the specific performance decree. The Debtors have objected to both motions based upon their characterization of the earnest money contract as an executory contract which may be properly rejected through the provisions of their Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(7).[3]

---

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (G), and (O).

2. The hearing to consider confirmation of the Debtors' proposed Chapter 13 plan is scheduled to be conducted on November 14, 2001.

3. 11 U.S.C. § 1322 governs the content of a chapter 13 plan and provides, under subsection (b)(7), that a proposed chapter 13 plan may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."

## Discussion

*Executory Nature of the Contract*

 "Pursuant to section 1322(b)(7), an executory contract or unexpired lease of the debtor that has not been rejected by the chapter 13 trustee under section 365(d)(2) prior to confirmation of the plan may be assumed, rejected or assigned under the plan." 8 COLLIER ON BANKRUPTCY ¶ 1322.11[2] at p. 1322–40 (15th ed. rev. 2001). Because the Bankruptcy Code does not provide a definition of the term "executory contract," one must look to applicable case law for an appropriate definition. The most frequently cited definition of "executory contract" is commonly denominated as the *Countryman* definition, which states that a contract is executory if the "obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973), *cited by Rusiski v. Pribonic (In re Pribonic),* 70 B.R. 596, 600 (Bankr.W.D.Pa.1987). The United States Supreme Court has endorsed this definition. *National Labor Relations Bd. v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) [finding that Congress intended a contract to be executory when to some extent performance remains due by both sides]. *See also, Phoenix Exploration, Inc. v. Yaquinto (Matter of Murexco Petroleum, Inc.),* 15 F.3d 60, 62–63 (5th Cir.1994); *Giddings Petroleum Corp. v. Peterson Food Mart, Inc.,* 859 S.W.2d 89, 92 (Tex.App.-Austin 1993, writ denied).

The parties in this case signed an earnest money contract requiring further performance by each party. Thus, upon its execution, the contract was clearly executory under the *Countryman* definition.

However, the question arises as to the effect of the April 4, 2001, decree of specific performance issued by the Polk County District Court against the Debtors. Debtors argue that, because they have yet to convey actual title to the Purchasers, and the Purchasers have yet to actually pay the purchase price, performance remains due by each party and the contract can therefore be properly characterized as executory and thus rejected. The Purchasers reject that proposition, claiming that the Debtors cannot legitimately reject the contract because, under the business judgment test, Debtors' unsecured creditors will not benefit from the decision to reject this contract. However, both parties ignore the prerequisite to the application of 11 U.S.C. §§ 365 or 1322(b)(7): the contract must be executory before it can be rejected. Relevant jurisprudence reveals that the existence of a pre-petition decree for specific performance of the earnest money contract is the determinative factor in any analysis of the executory nature of this contract.

Debtors rely on two cases for their argument that the contract should be properly characterized as executory and that rejection of it is therefore authorized. *In re Young* found that a purchase agreement was an executory contract subject to rejection because the purchaser had not yet paid the purchase price and the debtor-seller had yet to transfer title or relinquish possession of the property. *TKO Properties, LLC v. Young (In re Young),* 214 B.R. 905, 910 (Bankr.D.Idaho 1997). However, the purchaser in *Young* had not obtained an order of specific performance against the debtor as of the time of the filing of the Chapter 13 petition. Thus, material performance remained on each side of the transaction in that case. Likewise, *Benevides v. Alexander (In re Alexander),* 670 F.2d 885, 886 (9th Cir.1982), cited by the

Debtors, involved a contract under which a debtor had originally agreed to sell his home, but later refused to convey title to the property or surrender possession to the buyer. The buyer thereafter brought suit in state court, but on the day that the buyer's state court action against the debtor was to commence, the debtor filed for relief under Chapter 13 to halt the buyer's action for specific performance. *Id.* at 886. The *Alexander* court held that the contract could be rejected under 11 U.S.C. § 365 because it still retained its executory nature: the buyer had not paid the purchase price to the seller and the seller had not given up possession and conveyed title. *Id.* at 887.

■ The Debtors' reliance upon these two cases, however, is misplaced. Neither case involved a pre-petition decree of specific performance against the debtor-seller. This is the crucial fact in the present case because the pre-petition decree of specific performance transforms the Debtors' obligations under the contract. After the Polk County District Court entered its specific performance decree, the rights and obligations of both parties to the earnest money contract became defined and governed by the specific performance decree. *Hubler v. Oshman,* 700 S.W.2d 694, 698 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) [finding that "a decree of specific performance serves to incorporate the parties' agreement into the judgment" and that "Tex.R. Civ. P. 308 gives the court the authority to cause its judgment to be carried out, should any problems in these areas arise"]; [4] *Various Opportunities, Inc. v. Sullivan Investments, Inc.,* 677 S.W.2d 115, 118 (Tex.App.—Dallas 1984, no writ) [declaring that "a decree of specific performance serves to incorporate the parties' agreement into the judgment" and that "[f]uture enforcement of contractual rights, so incorporated, are contemplated by Rule 308, Tex.R. Civ. P."].[5] Because the state district court could not have entered a specific performance decree under Texas law without inherently finding that the Purchasers had either completed their contractual obligations, *Redwine v. Hudman,* 104 Tex. 21, 26, 133 S.W. 426, 429 (1911); *Witte v. Barry,* 16 S.W.2d 548, 549 (Tex. Civ.App.—Waco 1929, no writ), or were precluded from such completion due to the acts or omissions of the Debtors, *see Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 145 (1947); *Odum v. Sims,* 609 S.W.2d 881, 882 (Tex.Civ.App.—San Antonio 1980, no writ), any remaining obligations under the earnest money contract at issue were, of necessity, transformed by the entry of the specific performance decree into merely ministerial acts, the performance of which can be compelled by the state district court either under Rule 308 of the Texas Rules of Civil Procedure or under its inherent authority to enforce its own decrees. *Smith v. Miller,* 66 Tex. 74, 78, 17 S.W. 399, 401 (1886); *Various Opportunities, Inc.,* 677 S.W.2d at 118.

Accordingly, any attempt by the Debtors to characterize this sales contract as an executory contract has been precluded by the entry of the specific performance de-

---

4. Tex.R. Civ. P. 308 has long provided, in relevant part, that "The court shall cause its judgments and decrees to be carried into execution...."

5. The contractual rights and duties addressed by a specific performance decree are deemed integrated into the judgment to the extent that there is significant Texas jurisprudence which recognizes that the judgment can actually be utilized as the device through which the real property interest is literally transferred. *See, e.g., Brevard v. King,* 400 S.W.2d 576, 581 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.), *citing Robinson v. Davenport,* 40 Tex. 333, 334 (1874); *Copeland v. Bennett,* 243 S.W.2d 264, 271–72 (Tex.Civ.App.—El Paso 1951, no writ).

cree. *See, e.g., Winter v. Glaze (In re Glaze)*, 169 B.R. 956, 960 (Bankr.D.Ariz. 1994) ["This Court's review of the cases on the issue of what constitutes an executory contract reflects that the entry of a judgment is a critical point; thus, the contract for the sale of debtor's home is not an executory contract because of the pre-petition entry of judgment for specific performance."]; *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 B.R. 185, 187 (D.Mass.1988), *aff'd* 860 F.2d 1072 (1st Cir. 1988) [stating that "(o)nce a judgment for specific performance is entered, the parties' remaining unperformed obligations become non-material, or 'ministerial' acts through which the parties merely carry out the court's directive ..." and further acknowledging that "[c]ourts agree that the phrase 'executory contract' cannot be applied to a judicial order."]; *In re High Country Resorts*, 94 B.R. 193, 194 (Bankr. D.N.M.1988) ["After a judgment has been rendered on a contract it is no longer executory."]; *Pribonic*, 70 B.R. at 606 [finding a sales agreement contract to be non-executory and granting relief from the automatic stay to vendees under a real estate contract so that vendees could enforce a pre-petition decree of specific performance against vendor-debtor]; *Bregman v. Meehan (In re Meehan)*, 59 B.R. 380, 386 (E.D.N.Y.1986) [stating that the "state court's award (of specific performance) might be deemed to 'execute' the contract ... thereby removing it from the realm of executory contracts under the Bankruptcy Code"]; *Brown v. Bassett (In re Bassett)*, 74 B.R. 361, 362 (Bankr. D.Colo.1987) [finding that a contract for the purchase and sale of real property which is buttressed by a pre-petition order for specific performance is not an executory contract for purposes of 11 U.S.C. § 365].

Therefore, since the earnest money contract was not "executory" on the date of the filing of the bankruptcy case, it cannot be rejected by the Debtors under 11 U.S.C. §§ 365(a) and 1322(b)(7). This conclusion cannot be avoided simply by the fact that the subject property currently constitutes the Debtors' homestead. Both of the Debtors had contractually agreed to the sale of the homestead and, in compelling the Debtors to honor their respective contractual commitments through the entry of the specific performance decree, the state district court inherently rejected the existence of any impediment which might have relieved the Debtors from their obligations under the contract. Despite the Debtors' pleas for "equity" from this Court, this situation is far removed from the more common scenario of bankruptcy debtors facing eviction from their homestead through a threatened foreclosure. While the protection of a homestead for debtors and their dependents is often a legitimate goal of a Chapter 13 reorganization case, the Debtors in this particular instance will receive a handsome purchase price upon closing through which they may obtain a new homestead and proceed with their reorganization efforts. The fact that these Debtors now desire to keep this *particular* homestead is neither compelling nor availing.

Thus, the Court concludes that the Purchasers' motion to prohibit the Debtors' proposed rejection of the earnest money contract must be granted and that, based upon the foregoing, the Purchasers have established cause under § 362(d)(1) of the Bankruptcy Code for the termination of the automatic stay so as to permit the continuation of that certain litigation pending before the 411th Judicial District Court of Polk County, Texas under cause no. CIV 17,388 and styled *Bruce R. McAllister and wife, Shirley McAllister v. Henry F. Smith and wife, Krongthong Smith,* and to authorize that court to issue

whatever orders may be necessary or appropriate under the circumstances.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014.[6] Separate orders will be entered which are consistent with this opinion.

---

**6.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.