
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HARLAN PAGE CONFER, III and<br>CHARLOTTE CLUFF CONFER,<br>        Debtors. | BAP No. EC-21-1140-TBG<br><br>Bk. No. 2:21-bk-20167 |
| JACOB WATSON; JAMES WATSON,<br>        Appellants,<br>v.<br>HARLAN PAGE CONFER, III;<br>CHARLOTTE CLUFF CONFER,<br>        Appellees. | MEMORANDUM[1] |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Fredrick E. Clement, Bankruptcy Judge, Presiding

Before: TAYLOR, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Jacob and James Watson appeal the bankruptcy court's order

denying them relief from the automatic stay to proceed with enforcement

of a state court specific performance order. For the reasons stated below,

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

we VACATE and REMAND.

## FACTS[2]

### A. The Residential Purchase Agreement

Prepetition, octogenarians Harlan Page Confer, III and Charlotte Confer purchased their home in Red Bluff, California (the "Property"). The Property was encumbered by two deeds of trust. When the Confers fell behind on their mortgage payments, the lender noticed a foreclosure sale for January 27, 2020.

On the evening of January 26, 2020, real estate agent Edward Lenzer came to the Confers' home and conveyed the Watsons' offer to buy the Property for a price that would net the Confers $25,000 after payment of their mortgage debts and the costs of sale.

Mr. Confer recalls first asking Mr. Lenzer to arrange a loan to cure the arrearages or a consolidation of the two deeds of trust in lieu of the proposed sale. But Mr. Lenzer was not there as agent for the Confers; he apparently informed them that the sale was the only way to preserve any equity in the Property. Thus, Mr. Confer recalls agreeing to the sale on the condition that he could repurchase the Property if later able to do so. Mr. Lenzer disputes that Mr. Confer so conditioned the sale.

The next morning, Mr. Lenzer left a residential purchase agreement signed by the Watsons (the "Agreement") with the Confers to complete.

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

According to the Agreement at this point, Mr. Lenzer represented both the Watsons and the Confers in the sale. The Agreement provided that the Watsons would purchase the Property for $136,000, of which $22,000 would be paid directly to the Confers as a down payment and the remainder would be due at the close of escrow with the remainder paid to satisfy existing liens and costs of sale. It also obligated the Confers to turn over possession of the Property to the Watsons at the close of escrow.

The Confers signed the Agreement and delivered it to Mr. Lenzer moments before the auction. Mr. Lenzer then stopped the auction by presenting proof to the auctioneer that the Watsons had paid the Confers' mortgage arrearages.

Later that day, Mr. Lenzer realized that the Confers had failed to fully execute the Agreement. He returned to their home and remedied this oversight.

Thereafter, the Watsons made the down payment. But the Confers refused to sign escrow instructions, execute a deed to the Property, or turn over possession of the Property. Presumably because of this, the Watsons never deposited the balance of the purchase price into escrow.

## B. The State Court Action

In June 2020, the Watsons filed an action in state court for specific performance of the Agreement and damages for breach of the Agreement and fraud. The Confers did not participate in the state court action.

After conducting a default prove up hearing, the state court entered

3

an order on October 7, 2020, finding that: (1) the Agreement was a valid written contract; (2) the Watsons paid the down payment; (3) the Confers refused to proceed with the sale; (4) the Confers remained in possession of the Property; and (5) the Watsons had no adequate remedy at law. Thus, the order granted specific performance relief; it required the Confers to deposit executed escrow instructions and a grant deed for the Property into escrow by October 19, 2020. It ordered that escrow would close two business days after the Confers performed as ordered, and the Watsons deposited the balance of the purchase price. It also ordered escrow to close by January 5, 2021. The state court reserved the issue of "money requests" for later.

**C. The Chapter 13 Bankruptcy and Plan**

The Confers did not sign the escrow instructions or convey title. Instead, they filed a chapter 13[3] petition on January 20, 2021. Their creditors' matrix included the Watsons' state court counsel, Dean Law Firm, Inc., at its business address but did not include the Watsons.

The Confers filed bankruptcy schedules days later. Notably, they listed an ownership interest in the Property, valued the Property at $255,000, disclosed that their mortgage debts were in default, and claimed a $300,000 homestead exemption in the Property. They listed the Dean Law Firm—and not the Watsons—as holding a $32,174.42 unsecured claim. In

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

describing the debt, the Confers explained that the firm represented the Watsons in the state court action. Finally, the Confers did not list the Agreement as an executory contract in their schedule G.

The Confers filed a proposed chapter 13 plan with their schedules. The plan provided for 60 monthly payments to the chapter 13 trustee for distributions to creditors by class. It also provided for ongoing and delinquent mortgage payments, estimated that unsecured creditors would receive no dividend on their claims, rejected all executory contracts, and revested all estate property in the debtors upon confirmation.

The Clerk of the Court served notice of the case and the plan on creditors listed in the creditors' matrix, including the Dean Law Firm. Because the Watsons were not in the matrix, they only received notice through their state court counsel. The notice listed deadlines for objecting to exemptions, objecting to plan confirmation, filing a proof of claim, and filing certain nondischargeability proceedings. The Watsons did not file an objection to plan confirmation, a proof of claim, or an objection to the homestead exemption by the deadlines.

The bankruptcy court confirmed the plan after the deadlines for objecting to exemptions and confirmation had passed.

On the day before entry of the confirmation order, the Watsons filed a motion for relief from the automatic stay to enforce the state court's

specific performance order.[4] They argued that the Confers had no equity in the Property, the Property was unnecessary for an effective reorganization, and cause existed for stay relief. The Confers opposed the motion.

After a hearing on the stay relief motion, the bankruptcy court issued a memorandum decision and order denying stay relief. The bankruptcy court found that the Agreement was an executory contract, which the Confers rejected through their chapter 13 plan. The bankruptcy court further found that the plan bound the Watsons because they were served with notice of the bankruptcy and the plan through the Dean Law Firm. Thus, the bankruptcy court concluded that stay relief was unwarranted.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy erred in finding that the chapter 13 plan rejected the Agreement.

Whether the bankruptcy court abused its discretion in denying stay relief.

## STANDARDS OF REVIEW

"Whether adequate notice has been given for purposes of due process in a particular instance is a mixed question of law and fact that we

---

[4] The Watsons also filed an adversary proceeding to except the Confers' debt to them from discharge under § 523(a)(2)(A). The adversary proceeding is still pending.

review de novo." *Brawders v. Cnty. of Ventura (In re Brawders)*, 503 F.3d 856, 866 (9th Cir. 2007).

Whether a contract is "executory" under § 365 is a question of fact, which we review for clear error. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 234-35 (9th Cir. BAP 2017). A factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Id.* at 235.

A bankruptcy court's denial of relief from the automatic stay is reviewed for an abuse of discretion. *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 920 (9th Cir. BAP 1999). "A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.*

## DISCUSSION

A bankruptcy petition automatically stays certain acts against the debtor, the debtor's property, and the bankruptcy estate's property, including: (1) the continuation of a judicial proceeding against the debtor that was commenced prepetition; (2) the enforcement, against the debtor or estate property, of a judgment obtained prepetition; and (3) an act to obtain possession of estate property or to exercise control over estate property. §§ 362(a)(1), (2), (3). The Watsons moved for relief from the automatic stay to enforce the specific performance order against the Confers and their Property. They argued that they were entitled to stay relief under

§ 362(d)(1) "for cause."[5]

The bankruptcy court denied stay relief after determining that cause did not exist because the Agreement was an executory contract rejected in the chapter 13 plan.[6] The Watsons argue this was error because the specific performance order transformed an otherwise executory contract into a non-executory one, which could not be rejected. They further argue that, even if the Agreement is executory, they did not receive adequate notice of its proposed rejection in the plan such that they had a fair opportunity to challenge the rejection. We agree.

**A. The confirmed chapter 13 plan neither determines the executory nature of the Agreement nor rejects it.**

We start with the impact of the confirmed chapter 13 plan.

When a bankruptcy plan is confirmed and becomes final, its terms usually carry the same effect as a final judgment—it binds the debtor and all creditors and is res judicata as to all issues that were or could have been decided at the confirmation hearing. § 1327(a); *J.J. Re-Bar Corp., Inc. v. United States (In re J.J. Re-Bar Corp., Inc.)*, 420 B.R. 496, 502 (9th Cir. BAP 2009), *aff'd*, 644 F.3d 952 (9th Cir. 2011). This is so even when the plan contains an improper or illegal provision. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). Thus, under this general rule, if a

---

[5] We do not address the Watsons' additional § 365(d)(2) ground for stay relief because they waived the issue by failing to discuss it in their opening brief. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).

[6] Subject to § 365, a chapter 13 plan may reject an executory contract. § 1322(b)(7).

8

confirmed plan rejects a contract, a party to that contract cannot dispute that the contract is executory and susceptible to rejection under § 365(a). *See Davis v. Dunmore Props., Inc. (In re Davis)*, 503 B.R. 609, 616-17 (Bankr. M.D. Pa. 2013). But two dispositive exceptions to this rule apply here.

First, for a plan term to be preclusive, it must be clear and its proposed effect on the impacted creditor must be explicit. *In re Gonzales*, 512 B.R. 255, 261-62 (Bankr. C.D. Cal. 2014), citing *J.J. Re-Bar Corp., Inc.,* 420 B.R. at 503. "The burden of that lack of clarity appropriately falls on [the debtor]." *J.J. Re-Bar Corp., Inc.,* 420 B.R. at 503. Any ambiguity will be interpreted against the debtor. *In re Brawders*, 503 F.3d at 867. "[A]ny ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue." *Id*. And second, the preclusive effect of a confirmed plan does not extend to a creditor who does not receive adequate notice of the plan, such that its right to due process is violated. *Id*.

Here, the plan does not address the Agreement or the Watsons' specific performance rights in an explicit or clear manner. It includes a boilerplate term stating that all executory contracts are rejected. But, neither the plan nor the Confers' bankruptcy schedules list the Agreement as an executory contract. The bankruptcy court concluded that the Watsons should infer from the plan and schedules that the Agreement was being treated as an executory contract and would be rejected. We disagree.

When the Confers filed their chapter 13 case, they were required to

9

disclose all executory contracts in their schedule G. § 521; Rule 1007; *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 417 (9th Cir. BAP 2007). They had "a duty to prepare . . . [their] schedules . . . 'carefully, completely, and accurately' and [bore] the risk of nondisclosure." *In re JZ L.L.C.*, 371 B.R. at 417 (quoting *Cusano v. Klein*, 264 F.3d 936, 946-49 (9th Cir. 2001)). They needed to disclose every contract, including the Agreement, somewhere in their schedules "either in the asset/liability category or in the executory contract category." *Id*. They did not do so. Neither did they list the Watsons as creditors. Instead, they simply listed the Watsons' state court counsel as an unsecured creditor. This was inadequate to put the Watsons on notice that the Confers were characterizing the Agreement as executory and, thus, subject to rejection under § 365(a).

The Dean Law Firm's claim could be interpreted as pertaining, not to the specific performance awarded, but to the separate attorneys' fees and incidental compensation to which the Watsons may be entitled to fully vindicate their contractual rights. *See Behniwal v. Mix*, 147 Cal. App. 4th 621, 630-31 (2007) (incidental monetary relief and contractual attorneys' fees are awardable in addition to specific performance).

Moreover, the record is clear that the Confers did not intend to treat the Agreement as executory and to reject it in their chapter 13 plan. First, the Confers did not argue in their opposition to the Watsons' stay relief motion that the Agreement is executory and rejected. And second, at the hearing on the stay relief motion, the Confers' counsel remarked that it did

10

not occur to him that the Agreement is executory. Afterward, the bankruptcy court concluded the hearing, closed the record, and deemed the matter submitted. Thus, the parties did not have an opportunity to brief whether the Agreement was an executory contract rejected under the chapter 13 plan.

Given the Confers' duty to disclose all executory contracts in schedule G, the absence of any reference to the Watsons' specific performance rights or the Agreement in the schedules or the plan, the ambiguous nature of the Dean Law Firm's scheduled claim, and the absence of intent to reject the Agreement, we conclude that the plan neither rejected the Agreement nor upon confirmation precluded the Watsons from arguing that the Agreement is non-executory.

**B. The Agreement is not an executory contract.**

We further agree with the Watsons that the Agreement is not executory. The Ninth Circuit employs the "Countryman" definition to determine whether, for purposes of § 365, a contract is executory. *See Pac. Express, Inc. v. Teknekron Infoswitch Corp. (In re Pac. Express, Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986). Under this definition, a contract is executory if the obligations of both parties to the contract "are so far underperformed that the failure of either would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973); *see also Com. Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1271-72 (9th Cir.

11

1992).

The bankruptcy court relied on a Ninth Circuit case, *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885 (9th Cir. 1982), in finding that the Agreement was executory. In *Alexander*, the debtor executed a real estate purchase agreement for the sale of her property. By the scheduled closing date, the buyers had made the required down payment, deposited additional funds into escrow, and had a loan commitment for the balance of the purchase price. *Id*. at 887. The debtor refused to convey title or surrender possession. Instead, she filed a chapter 13 case and proposed to reject the contract in her plan. Applying the Countryman definition, the Ninth Circuit held that the question of whether the agreement was executory turned on whether the buyers had fully performed or merely tendered performance. It found that the buyers had done the latter because they needed to pay the balance of the purchase price. Consequently, the agreement was executory and susceptible to rejection.

Similarly, the Watsons had not paid the full purchase price by the petition date. Unlike in *Alexander*, however, a state court issued a prepetition order compelling specific performance of the Agreement. This distinction is critical.

Most courts hold that a contract for the sale of a debtor's property is no longer executory and cannot be rejected once a court has ordered specific performance of the contract. *See, e.g.*, *Butler v. Resident Care Innovation Corp.*, 241 B.R. 37, 46-47 (D.R.I. 1999); *Sundial Asphalt Co., Inc. v.*

*V.P.C. Invs. Corp. (In re Sundial Asphalt Co., Inc.)*, 147 B.R. 72, 80 (E.D.N.Y. 1992); *Roxse Homes, Inc. v. Roxse Homes Ltd. P'ship*, 83 B.R. 185, 187 (D. Mass. 1988), *aff'd* 860 F.2d 1072 (1st Cir. 1988); *Kendall Grove Joint Venture v. Martinez-Esteve,* 59 B.R. 407, 409 (S.D. Fla. 1986); *Bregman v. Meehan (In re Meehan)*, 59 B.R. 380, 386 (E.D.N.Y. 1986); *In re Baver*, No. 21-10806, 2021 WL 5815643, at *5 (Bankr. S.D. Ohio Nov. 2, 2021); *In re Brick House Props., LLC*, 633 B.R. 410, 417-23 (Bankr. D. Utah 2021); *In re Bennett Enters., Inc.*, 628 B.R. 481, 488-90 (Bankr. D.N.J. 2021); *Davidson v. Barstad (In re Barstad)*, No. 17-60586-TLM, 2019 WL 2479311, at *5-7 (Bankr. D. Mont. June 12, 2019); *In re Acevedo*, 441 B.R. 428, 434 (Bankr. S.D.N.Y. 2010); *In re Giordano*, 446 B.R. 744, 749 (Bankr. E.D. Va. 2010); *In re Smith*, 269 B.R. 629, 631 (Bankr. E.D. Tex. 2001); *Winter v. Glaze (In re Glaze)*, 169 B.R. 956, 960 (Bankr. D. Ariz. 1994); *In re High Country Resorts*, 94 B.R. 193, 194 (Bankr. D.N.M. 1988); *Brown v. Bassett (In re Bassett)*, 74 B.R. 361, 363 (Bankr. D. Colo. 1987); *Rusiski v. Pribonic (In re Pribonic)*, 70 B.R. 596, 599-601 (Bankr. W.D. Pa. 1987).

These courts generally reason that once specific performance is decreed, the rights and obligations of the parties become defined and governed by the decree rather than by the contract. The debtor, thus, only has the non-material, or "ministerial," obligation of delivering title under the decree. If the debtor refuses to comply with the decree, applicable state law typically provides mechanisms for the court or a court-appointed third party to act in the debtor's stead to covey title. In other words, a failure to

13

act is no longer breach of contract, it is a violation of a court order.

In issuing the specific performance order, the state court necessarily determined that the Watsons were ready, willing, and able to perform their contractual obligations under the Agreement. *See* Cal. Civ. Code §§ 1439, 3386(b), 3392; *Gaggero v. Yura*, 108 Cal. App. 4th 884, 890 (2003). And under applicable California law, the state court had the necessary tools to convey title to the Watsons without the Confers' involvement; every California court has the power to compel obedience to its orders. Cal. Civ. Proc. Code § 128(a)(1). Thus, if a seller fails to convey property to a buyer as directed by a specific performance order, the court may appoint its clerk to effect the conveyance on the seller's behalf. *Blueberry Props., LLC v. Chow*, 230 Cal. App. 4th 1017, 1020-21 (2014). Indeed, the specific performance order authorizes the Watsons to move the state court ex parte to hold the Confers in contempt of court if they failed to convey the Property and to request that the state court take necessary action to close escrow.

The bankruptcy court acknowledged the power of a California court to appoint its clerk to convey title in a defaulting seller's stead. It held, however, that the specific performance order had no binding effect in its determination of whether the Agreement was executory because the order was not final. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (California courts may only apply issue preclusion to final decisions on the merits); *Kassir v. Zahabi*, 164 Cal. App. 4th 1352, 1357 (2008) (a specific performance decree is an interlocutory order). We disagree;

14

whether the Agreement is executory does not turn on whether the specific performance order is final. This is not an issue preclusion matter.

Whether a contract is executory typically turns on the facts in existence on the petition date. *Collingwood Grain, Inc. v. Coast Trading Co., Inc. (In re Coast Trading Co., Inc.)*, 744 F2d 686, 692 (9th Cir. 1984). The bankruptcy court and parties did not cite, nor have we located, any authority that undermines the enforceability of the specific performance order on the petition date because of its interlocutory nature.

The order itself clearly contemplates its immediate enforceability. It required the Confers to execute escrow instructions and a deed for the transfer of the Property to the Watsons by October 19, 2020—well before the petition date. Thus, on the petition date, the state court had the power to appoint an elisor to convey the Property upon the Watsons' payment of the balance of the purchase price into escrow. *See* Cal. Civ. Proc. Code § 128(a)(1). Albeit interlocutory, the order made the Agreement non-executory by eliminating the need for the Confers to fulfill their contractual obligations on the petition date. An elisor could convey title under the decree. *See In re Bennett Enters., Inc.*, 628 B.R. at 490 (finding contract was non-executory even though state court's specific performance order was interlocutory on the petition date); *In re Barstad*, 2019 WL 2479311 at *5-7 (same); *cf. In re Ter Bush*, 273 B.R. 625, 628 (Bankr. S.D. Cal. 2002) ("Although Debtors' bankruptcy filing prevented [purchaser] from getting a final judgment [confirming a prepetition arbitration award for specific

15

performance] because of the automatic stay going into effect, that technicality does not cause the Agreement to remain executory.").

For the foregoing reasons, the bankruptcy court erred in determining that the Agreement is executory.

## C. The bankruptcy court abused its discretion in denying stay relief.

We next turn to the issue of whether the bankruptcy court abused its discretion in denying the Watsons relief from the automatic stay.

Section 362(d)(1) requires a bankruptcy court to grant stay relief "for cause." "Cause" is not defined by the Bankruptcy Code and is determined on a case-by-case basis. *Mac Donald v. Mac Donald (In re Mac Donald)*, 755 F.2d 715, 717 (9th Cir. 1985). A legitimate consideration in determining whether cause exists is the desire to proceed in an action to completion in another tribunal. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 343-44 (1977); *First Fed. Bank of Cal. v. Robbins (In re Robbins)*, 310 B.R. 626, 629-30 (9th Cir. BAP 2004). As relevant here, courts have found that cause exists to grant stay relief to enforce prepetition state court decrees against debtors for the specific performance of contracts that were no longer executory and were therefore not subject to rejection. *See, e.g., In re Meehan*, 59 B.R. at 386; *In re Roxse Homes, Inc.*, 74 B.R. 810, 819 (Bankr. D. Mass. 1987), *aff'd sub nom. Roxse Homes, Inc.*, 83 B.R. 185, *aff'd In re Roxse Homes, Inc.*, 860 F.2d 1072.

In this case, the bankruptcy court denied stay relief for cause based on its erroneous conclusions that the Agreement was executory and rejected. We see no indication in the record that it considered other

16

relevant factors in determining that cause did not exist. *See Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 389 (9th Cir. BAP 2020) (discussing factors considered in assessing whether stay relief should be granted). We thus vacate the order denying stay relief and remand for the bankruptcy court to consider whether cause exists in light of this memorandum.

## CONCLUSION

Based on the foregoing, we VACATE and REMAND.