**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: J.J. RE-BAR CORP., INC.,
                        *Debtor,*

———————————

J.J. RE-BAR CORP., INC.,
                        *Appellant,*

v.

UNITED STATES OF AMERICA
                        *Appellee.*

No. 09-60054

BAP No.
09-1040-DjuBa

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Baum, Dunn, and Jury, Bankruptcy Judges, Presiding

Argued and Submitted
March 17, 2011—San Francisco, California

Filed June 24, 2011

Before: Thomas M. Reavley,* M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.

Opinion by Judge McKeown

*The Honorable Thomas M. Reavley, Senior United States Circuit
Judge for the Fifth Circuit, sitting by designation.

## COUNSEL

Estela Pino, Pino & Associates, Sacramento, California, for the appellant.

Thomas Clark and Rachel Wollitzer, U.S. Department of Justice, Washington, D.C., for the appellee.

## OPINION

McKEOWN, Circuit Judge:

Although the Anti-Injunction Act explicitly prohibits courts from enjoining the IRS's collection of taxes, J.J. Re-Bar Cor-

poration seeks an interpretation of its Chapter 11 bankruptcy plan that would do just that. Asking us to ignore the clear policy of the Act, J.J. Re-Bar relies on the unique nature of bankruptcy proceedings to argue that its confirmed plan of reorganization unambiguously precludes the IRS from assessing a statutory tax penalty against its corporate officers. In effect, J.J. Re-Bar seeks to have the bankruptcy plan trump the Anti-Injunction Act in an effort to avoid the assessment of an otherwise uncontested tax. The Anti-Injunction Act has no such loophole or exception and we decline to create one here.

## BACKGROUND

The facts in this appeal are not in dispute. J.J. Re-Bar Corporation was founded in 1974 by Joseph J. Skokan and Joanne Skokan. The Skokans and their son, Joseph M. Skokan, are J.J. Re-Bar's principal officers. From 1995 through the first quarter of 1997, J.J. Re-Bar failed to pay federal employment taxes. A large portion of the unpaid taxes were trust-fund taxes—that is, income and social security taxes that J.J. Re-Bar withheld from employee paychecks and held in trust for the government. *See* 26 U.S.C. §§ 3102, 3402, 7501(a).

In January 1998, J.J. Re-Bar filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of California. J.J. Re-Bar submitted a plan of reorganization (the "Plan") and continued to operate as a debtor-in-possession. The bankruptcy court approved J.J. Re-Bar's disclosure statements and set a deadline for any objections to the proposed Plan. The IRS did not object and the Plan was confirmed by the bankruptcy court. The IRS did not appeal from the court's confirmation order.

Important for purposes of this appeal, Article X of the confirmed Plan provided for the discharge of all debts pursuant to which J.J. Re-Bar is the "primary obligor." In its entirety, Article X states as follows:

> Upon confirmation, the DEBTOR shall receive, to the fullest extent possible, any and all discharges afforded by the Bankruptcy Code. In addition, the entry of an order confirming this Plan shall constitute a release of any and all claims, causes of action, rights, disputes in existence prior to the confirmation whether known or unknown, liquidated or unliquidated, fixed or contingent, by any parties against the DEBTOR or claims on which the DEBTOR is the primary obligor. Such parties' sole recourse as to claims against the DEBTOR or on which the DEBTOR is the primary obligor shall be to accept the treatment given to such party under this Plan.

> The Order of Confirmation shall constitute a permanent stay and permanent injunction *prohibiting any action* by any party against the DEBTOR, against property of the DEBTOR, or *against any party based upon a claim, which existed prior to Confirmation, pursuant to which the DEBTOR is the primary obligor* which existed prior to confirmation.

Plan of Reorganization, Article X (emphasis added). The bankruptcy court's confirmation order served as a permanent injunction enforcing this provision of the Plan.[1]

Because the IRS was engaging in an extensive audit of J.J. Re-Bar's finances at the time of confirmation, the Plan allowed the IRS to amend its claim at a later date. After the

---

[1]Paragraph 10 of the confirmation order provides that

> [a]ll creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by Article X of the Final Plan of Reorganization Proposed by Debtor are permanently enjoined from instituting or continuing any action or employing any process or engaging in any act to collect on a debt discharged herein and/or engaging in any act prohibited by Article X of the Final Plan.

audit was completed in 2002, the IRS issued a bill to J.J. Re-Bar for unpaid payroll taxes, fraud penalties, and interest. The final IRS claim, which was reached in a negotiated settlement, consisted of a priority unsecured claim of $1,425,083.52 and a general unsecured claim of $1,675,951.92. J.J. Re-Bar began making monthly payments in December 2007 and has continued to make timely payments under the Plan since that time.

Despite J.J. Re-Bar's initiation of payments, in late December 2007 the IRS contacted the Skokans regarding the potential assessment of a Trust Fund Recovery Penalty ("TFRP"). Under 26 U.S.C. § 6672, the IRS may collect a TFRP against individual officers who are responsible for a corporation's failure to remit trust fund taxes—the tax withholdings from employee paychecks—to the government. The Skokans refused to cooperate with the IRS's investigation and related summons, asserting that the assessment of a penalty would violate the terms of the Plan.

Seeking to stop the IRS's collection efforts, J.J. Re-Bar filed a motion to enforce Article X of the Plan and to hold the IRS in contempt. J.J. Re-Bar argued that the IRS was endeavoring to hold the Skokans liable for a "claim, which existed prior to Confirmation, pursuant to which the [J.J. Re-Bar] is the primary obligor." Plan of Reorganization, Article X. In other words, J.J. Re-Bar asserted that because *it* was the primary obligor on the underlying trust-fund tax obligation, the collection of a TFRP from the Skokans violated the express terms of Article X discharging such claims.[2]

---

[2]Before oral argument we asked the parties to address whether J.J. Re-Bar had standing to challenge the assessment of a § 6672 tax against the Skokans, a third-party. Although we are not wholly convinced J.J. Re-Bar has pled the requisite injury in fact to establish standing, for purposes of this appeal we assume standing based on J.J. Re-Bar's representations at oral argument that its business operations would be severely disrupted by the imposition of the TFRP. We instead rely on the Anti-Injunction Act

The bankruptcy court denied J.J. Re-Bar's motion, concluding that the Anti-Injunction Act prohibited the court from exercising jurisdiction over the IRS's collection efforts and, even if the court had jurisdiction, the assessment of the TFRP did not violate the terms of the Plan because J.J. Re-Bar was not the "primary obligor" on the TFRP liability. On J.J. Re-Bar's appeal, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") affirmed. We review de novo the decision of the BAP, the same standard applicable to the legal question at issue in this appeal. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009) (applying de novo standard to appeal from BAP); *Miller v. United States*, 363 F.3d 999, 1003 (9th Cir. 2004) (reviewing de novo legal questions).

## ANALYSIS

**[1]** The Anti-Injunction Act, 26 U.S.C. § 7421(a), provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The purpose of the Act is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.' " *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). Thus, it is our general rule that the Anti-Injunction Act "precludes federal jurisdiction" over actions seeking to enjoin the IRS's tax collection efforts. *Hansen v. Dep't of Treasury*, 528 F.3d 597, 601 (9th Cir. 2007).

---

to dispose of this appeal "because it is relatively straightforward, avoids deciding a constitutional question (Article III standing), and provides the narrowest ground for decision." *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*, 895 F.2d 1277, 1279 (9th Cir. 1990) (internal citations and quotation marks omitted).

**[2]** We previously addressed the application of the Anti-Injunction Act in a bankruptcy proceeding involving § 6672 liability. *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*, 895 F.2d 1277, 1279 (9th Cir. 1990). Similar to this case, in *American Bicycle* a debtor corporation sought an injunction preventing the collection of a TFRP from one of its corporate officers. Notably, we held that "the Anti-Injunction Act precludes a bankruptcy court from enjoining the IRS from collecting a [TFRP] assessed under 26 U.S.C. § 6672 against the responsible officer of a debtor corporation." *Id.* at 1281. Nonetheless, J.J Re-Bar asks us to deviate from this general rule and enjoin the IRS from collecting a § 6672 assessment from the Skokans. Our holding in *American Bicycle*, however, is abundantly clear: "the text of the Anti-Injunction Act is specific and unequivocal" and prohibits courts from exercising jurisdiction over such actions. *Id.* at 1279-80.

J.J. Re-Bar's various arguments to the contrary are unavailing. J.J. Re-Bar primarily contends that its appeal does not implicate the Anti-Injunction Act or our holding in *American Bicycle* because the injunction at issue here was already in effect as part of a confirmed Chapter 11 bankruptcy plan.[3] According to J.J. Re-Bar, the Anti-Injunction Act only bars courts from issuing *new* injunctions in *independent* legal proceedings, as was the case in *American Bicycle.* We disagree with this characterization of *American Bicycle* and decline to cabin its holding to such narrow circumstances. J.J. Re-Bar's approach merely elevates form over substance and is not persuasive.

---

[3]J.J. Re-Bar's argument is premised on the principle that the terms of a confirmed Chapter 11 plan are binding and entitled to preclusive effect, even with respect to jurisdictional defects. See *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1997). Taking its cue from *Trulis*, J.J. Re-Bar reads the Plan as clearly, specifically, and unambiguously discharging any potential § 6672 liability. Of course the Plan does no such thing.

**[3]** Even an explicit effort to disclaim § 6672 liability in a bankruptcy plan cannot avoid the reach of the Anti-Injunction Act. In *United States v. Condel, Inc. (In re Condel, Inc.)*, 91 B.R. 79, 82 (B.A.P. 9th Cir. 1988), the BAP considered a bankruptcy plan that included explicit language protecting corporate officers from liability under § 6672. In reversing the bankruptcy court's confirmation of the plan, the BAP noted that a debtor corporation "[can] not be permitted to do indirectly what it cannot by law accomplish directly. Allowing a debtor to avoid or forestall the tax liabilities of its officers by use of a Plan would violate the policy of the Anti-Injunction Act as readily as allowing the debtor to avoid such liability by filing a suit for injunctive relief." *Condel*, 91 B.R. at 82 (internal citations omitted).

**[4]** We adopt *Condel's* persuasive reasoning here. It is well settled in this circuit that "the Anti-Injunction Act precludes a bankruptcy court from enjoining the IRS from collecting a [TFRP] assessed under 26 U.S.C. § 6672 against the responsible officer of a debtor corporation." *Am. Bicycle Ass'n*, 895 F.2d at 1281. The relief sought here by J.J. Re-Bar would effectively preclude the IRS's collection of a § 6672 assessment, and thus falls squarely within the reach of the Anti-Injunction Act and our holding in *American Bicycle*. *See, e.g.*, *Hansen*, 528 F.3d at 601 (although plaintiffs did not "specifically seek an injunction restraining the assessment or collection of tax, the relief he seeks . . . would 'necessarily preclude the collection of' the challenged tax and therefore falls within the Act's scope" (quoting *Bob Jones Univ.*, 416 U.S. at 732)). We thus affirm the bankruptcy court's dismissal of this action for lack of jurisdiction.

**[5]** We also have an alternate path to affirm dismissal of the claim—the Skokans, not J.J. Re-Bar, are the primary obligors under § 6672. J.J. Re-Bar contends that the IRS's assessment of a TFRP violates Article X of the Plan because the penalty is "based upon a claim . . . pursuant to which [J.J Re-Bar] is the primary obligor." Plan of Reorganization, Article

X. Although this creative theory is appealing in the abstract, it fails to account for the unique characteristics of § 6672 liability.

**[6]** "Section 6672 represents one of the means available to the government to ensure that [ ] withheld taxes are eventually collected and paid over." *Purcell v. United States*, 1 F.3d 932, 936 (9th Cir. 1993). Under that section,

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C.§ 6672(a).[4] We have explicitly held that § 6672 "operates as a penalty by creating an obligation, *separate and distinct* from the underlying tax obligation." *Duncan v. Comm'r*, 68 F.3d 315, 318 (9th Cir. 1995) (emphasis added); *see also SEC v. Sec. Nw., Inc.*, 573 F.2d 622, 626 (9th Cir. 1978) ("[L]iability for unpaid withholding taxes [ ] imposed under 26 U.S.C. § 6672 [ ] is a totally independent liability from that of the corporation." (internal quotation marks omitted)). Thus, we cannot accept J.J. Re-Bar's notion that its tax debt and the potential § 6672 liability of the Skokans are one and the same.

**[7]** In light of the well-established principle that § 6672 liability is a separate and distinct liability, we agree with the bankruptcy court's alternative holding that although a corporation may be the primary obligor on its own underlying tax obligation, it is not the primary obligor on the *separate and*

---

[4]Liability under § 6672 is assessed and collected "in the same manner as taxes." 28 U.S.C. § 6671(a).

*distinct* assessment under § 6672. Rather, the corporate officers are the primary obligors on TFRP liabilities, as these liabilities are assessed independently under § 6672 for the officers' own *willful* conduct. *See Davis v. United States*, 961 F.2d 867, 869-70 (9th Cir. 1992) ("[R]ecovery of a penalty under section 6672 entails showing that the individual both was a 'responsible person' and acted willfully in failing to collect or pay over the withheld taxes.").

**AFFIRMED.**