## TAX COURT OF NEW JERSEY



TAX COURT MANAGEMENT OFFICE
(609) 815-2922

P.O. Box 972
TRENTON, NJ 08625-0972

# Corrected Opinion Notice

## Date: May 8, 2025

**Vincent R. Kramer, Jr., Esq.**

**Heather Lynn Anderson**

**From: Shannon M. Tremel**

**Re: James Patyrak and N.Y. Thymes & Deli, Inc. v. Director, Division of Taxation
Docket number: 013546-2016**

The attached corrected opinion replaces the version released on May 8, 2025 The opinion has been corrected as noted below:

**Judge's signature added on final page of opinion**

**TAX COURT OF NEW JERSEY**



| | | |
|---|---|---|
| **MALA SUNDAR**<br>**PRESIDING JUDGE** | | Richard J. Hughes Justice Complex<br>P.O. Box 975<br>Trenton, New Jersey 08625-0975<br>609 815-2922, Ext. 54630 Fax 609 376-3018 |

May 7, 2025

Vincent R. Kramer, Jr., Esq.
Attorney for Plaintiffs

Heather Lynn Anderson, Esq.
Deputy Attorney General
Attorney for Defendant

> Re:  James Patyrak and N.Y. Thymes & Deli, Inc., v. Director,
> Division of Taxation
> <u>Docket No. 013546-2016</u>

Dear Counsel:

This opinion ensues from trial in the above-captioned matter where the only issue was the validity of defendant's audited assessments against the corporate plaintiff for tax periods July 1, 2010, through June 30, 2014, for sales and use tax, and litter tax, as reflected in defendant's final determination.

For the reasons that follow, the court finds that (a) defendant's final determination must be upheld due to plaintiff's failure of proof; (b) defendant cannot collect the tax on its audited assessments for tax periods up to September 27, 2012, from the corporate plaintiff due to the Consent Order entered by the Bankruptcy Court in connection with the corporate plaintiff's Chapter 11 bankruptcy; (c) the court does not have subject matter jurisdiction to decide whether confirmation of the corporate plaintiff's Chapter 11 plan discharges, thus bars collectability of, the

assessed taxes for periods after September 27, 2012 and through 2014, and leaves the determination of this issue to the Bankruptcy Court; and (d) the corporate plaintiff's bankruptcy does not prevent collection of the audited sales tax assessments for any period under audit, from the individual plaintiff, who this court has previously found to be a responsible person of the corporate plaintiff.

**FACTS**

The matter was subject of this court's prior two decisions on the parties' respective motions for partial summary judgment, wherein the facts were detailed. For context of this trial, the court summarizes the pertinent facts. Plaintiff, N.Y. Thyme and Deli, Inc. ("NYTD") was engaged in retail sale of food and drink items. Plaintiff James Patryrak ("Mr. Patyrak") was the entity's sole shareholder and officer. He operated the business from its inception in 1987 until 2008 when he moved to Florida, leaving the day-to-day business operations to a manager.

*NYTD's Bankruptcy Proceedings*

On September 27, 2012, NYTD filed for bankruptcy under Chapter 11 in the Bankruptcy Court for the District of New Jersey. It listed taxes owed to defendant, the Director, Division of Taxation ("Taxation") as "unsecured priority claims," and maintained they were "contingent" and "disputed." The filing indicated that Mr. Patyrak and Deborah Patyrak were also liable on those taxes.

2

On October 10, 2012, Taxation filed three proofs of claim in NYTD's

bankruptcy as follows:

(1) A secured claim[1] of $16,278.58 - this was for deficient[2] Gross Income Tax - Employer Withholding ("GIT-ER") for three quarters of 2009; deficient sales/use tax ("SUT") for three quarters of 2009 and the first quarter of 2010, plus penalty and interest (but after credit for payments already made).

(2) A priority proof of claim in the amount of $324,583.62 - this was for audited SUT for tax years 2001 through 2004 (tax $148,291.11; interest $167,550.63). The balance was for audited litter tax for tax years 1997 through 2003; deficient corporation business tax ("CBT") for tax years 2008-2010; and deficient GIT-ER for the four quarters of 2010 and the first two quarters of 2012.

(3) A general unsecured claim of $1,705.45 for cost of collection for the "return" period of October 2010.

NYTD's Chapter 11 reorganization plan, filed in October of 2013, stated that

its "primary liabilities" were predominantly tax claims totaling $601,538.78, and it

had filed for bankruptcy due to the SUT audited liability. The plan proposed to pay

$167,848.90 "in full satisfaction" of Taxation's claims of $342,567.65 over an 84-

month period, without interest. The plan was to be funded by NYTD's "future

---

[1] A secured claim is one asserted by a creditor to be subject to a lien on a debtor's property. See 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property").

[2] A deficient tax represents a self-reported but unpaid or underpaid tax.

income from operations." Upon confirmation of its Chapter 11 plan, NYTD would be discharged "from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date" (90 days after plan confirmation) and "to the extent specified in § 1141."

On December 16, 2013, the Bankruptcy Court entered a Consent Order that was executed between NYTD and Taxation, as to Taxation's claims. Per that Order, (1) Taxation withdrew its general unsecured claim; (2) Taxation's priority claim was amended (and reclassified) as a secured claim; and (3) Taxation's secured claim was amended and allowed in the amount of $167,848.90 (payable over as 84 monthly payments, interest-free, unless NYTD defaulted). The Order stated that "parties acknowledge that the $167,848.90, when payments are completed, will fully satisfy any and all obligations of" NYTD "for taxes up to the" bankruptcy "petition" (i.e. filing) date. NYTD agreed to not have Taxation, a federal or state court, modify the $167,848.90 amount. The Order was deemed final "as to the tax liabilities and tax periods" recited in Taxation's proofs of claim, with certain exceptions not relevant here. The Order also stated that "except for the purpose of enforcing the discharge provisions of the confirmed plan," the Bankruptcy Court retained no jurisdiction as to Taxation's "claims."

NYTD's Chapter 11 plan was confirmed on December 30, 2013. An Order in this regard was entered on January 1, 2014.

4

On June 5, 2014, NYTD filed a motion to convert its case to one under Chapter 7 (liquidation) "resulting from [NYTD's] breach of the Plan and confirmation Order and attendant obligations," and to sell its liquor license (the only asset) for $225,000. The court granted the motion on December 15, 2014, and issued interim orders as to the proceeds from sale of the liquor license.

On August 15, 2015, the parties submitted a consent order to the court that from the $232,500 gross proceeds of the liquor license sale,[3] Taxation was to get the first $167,000. The court entered this Order on August 20, 2015.

NYTD's bankruptcy case closed on November 17, 2015. However, prior to this, and by mid-August 2014, NYTD ceased operations.

*Taxation's Audit Post-NYTD's Bankruptcy Filing*

In the fall of 2014 (after NYTD filed for bankruptcy but before that case was closed), Taxation audited NYTD for the tax periods July 1, 2010, through June 30, 2014, at Taxation's offices in Hackensack. It requested several documents for this purpose from NYTD.

By letter of September 14, 2014, Mr. Patyrak advised Taxation that (a) due to resolution of Taxation's claims in NYTD's bankruptcy, any information request prior to the conclusion of NYTD's bankruptcy were improper; (b) he was enclosing general ledger and bank statements, and other documents such as invoices could be

---

[3] The $232,000 was due to an additional contribution of $7,500 from Mr. Patyrak.

5

picked up at NYTD's counsel's office; and (c) a quick review of the "relevant period, 2014" indicated NYTD owed about $7,500 "for unremitted sales tax for the period."

Taxation responded by letter of September 23, 2014, that "all periods in statute are open for audit" per its bankruptcy section, since the "audit period is 7/10-6/14." It also noted that it could not discuss the audit with NYTD's counsel since his power of attorney was only for 2014.

Taxation then concluded the audit based on the information provided by NYTD. An audit worksheet (Schedule R-2 for the sample period January to August 2014) showed the gross sales per the general ledger, and the amount of those sales categorized and sub-categorized (e.g., the category "sales" was sub-categorized as "sales-bakery;" "sales-package;" "sales-salads;" "sales-dinner"), as taxable by the auditor. Of the $448,453.74 reported sales for the sample period, the auditor deemed 91.9%, or $412,198.33, as taxable. She applied this 91.9% error rate to the gross receipts reported on NYTD's CBT returns for the last quarter of 2010, tax years 2011-2013, and for January through August of 2014, applied the 7% sales tax rate to the same for a total tax (after credits) of $67,433. She added $7,132.41 as use tax for NYTD's purchases of supplies and cards on which sales tax was not collected when purchased. This provided a total SUT liability of $74,565.41 for the periods October 2010 through September 30, 2014 (and $91,107.31 with interest and penalties). She also assessed $171.45 as litter tax for tax year 2013.

By letters dated December 24, 2014, and December 31, 2014, Mr. Patyrak, as President of NYTD, wrote to the auditor objecting to the "initial audit report dated 12.8.2014." He stated that the auditor erred in deeming four categories as taxable; bakery ($28,514.48); salads ($10,360.16); retail beverage ($50,425.29); and retail juice ($6,819.08). He noted that the category of "bakery contains baked goods made in the store such as those sold in a bakery and is nontaxable." Likewise, he stated, the category of salads "represents those bulk salads sold by the pound as well as salads manufactured in the store and sold as a single item" as was done in grocery stores. Similarly, he noted, the category of beverages was "non-carbonated [items] such as juices, iced teas and water," such as those sold in grocery stores as compared to the "small number of carbonated beverages and coffee," which were taxable. With these adjustments, he noted, the "non-taxable amount" listed by the auditor would increase to $127,331.89 (thus about 28.4% of NYTD's sales), as compared to the auditor's nontaxable amount of $36,255.41, which in turn would make the "taxable amount" at "71.6%" as opposed to the auditor's 91.9% calculation.

Mr. Patyrak also objected to the use tax assessment, claiming that the auditor's basis for the same was unclear. He further stated that the assessments were foreclosed since NYTD "exited" its bankruptcy in late December 2013, and had settled Taxation's claims through that date. He however agreed that the viable (assessable) tax periods were January 2014 through September 2014.

7

On January 8, 2015, Taxation issued a Notice of Finding of Responsible Person Status. Per that Notice, Mr. Patyrak was deemed to be personally liable for NYTD's sales tax assessment ($67,433) plus interest and penalties for a total of $80,614.99, for the third quarter of 2010 through the third quarter of 2014.

On January 9, 2015, NYTD's counsel wrote to the auditor essentially repeating Mr. Patyrak's objections to the audit. He added that NYTD disputed "any monetary liability . . . which may have been assessed for any period of time prior to December 20, 2013" because Taxation was bound by its settlement in the bankruptcy proceedings and did not object to the plan provisions as confirmed. He agreed that "the period from December 20, 2013[,] down to August 25[,] 2014[,] is subject to assessment."[4]

Mr. Patyrak timely protested the audit and the responsible person status determination to Taxation's Conference and Appeals Branch. The protest contended that because Taxation never conducted a post-audit conference, the audit was not final, therefore, the assessed amounts were not final (i.e., could have been resolved if there had been a conference), and Taxation's Notice of Responsible Person status was premature as well.

---

[4] In a September 8, 2016, e-mail, Taxation provided NYTD's counsel an itemization of deficient taxes, noting that there were "post-petition and were not part of the settlement agreement." The taxes listed were CBT for 2013 through 2015, and deficient SUT for the first, second and last quarter of 2013 and totaled $14,793.90.

Taxation issued a final determination on August 10, 2016, upholding the audit, and noting as follows:

> The taxpayer did not report and[/] or remit sales tax due for taxable sales for the audit period 10/01/2010 through 09/30/2014.  A review of Audit work-papers . . . indicates that Audit utilized the taxpayer's Sales Journal for the 2014 year since no CBT was filed for 2014 at the time of the Audit.  A review of the filed 2014 CBT return reflects little more than $4,000 in Gross Receipts vs the Sales Journal total of $448,454.

Plaintiffs filed a timely complaint with the Tax Court on November 10, 2016, challenging Taxation's final determination as to the audit, and the finding that Mr. Patyrak was a responsible person of NYTD.

*Prior Court Orders*

Based on motions for summary judgments, the court entered two Orders.[5]  The first one, dated January 6, 2023, granted Taxation's motion for partial summary judgment based on the undisputed facts that Mr. Patyrak was a responsible person of NYTD.  The court left open the amount of sales tax for which he was personally liable which would depend on the outcome of the trial as to NYTD's complaint against Taxation's final determination.  There was no request for reconsideration, nor an appeal of this Order.

---

[5]  The matter was initially assigned to, and heard by, a different Tax Court judge who entered the two prior Orders as to each party's summary judgment motion.  Thereafter, the matter was assigned to undersigned judge.

The second Order, dated April 5, 2024, denied NYTD's and Mr. Patyrak's motion for summary judgment that Taxation's audited assessment be vacated (thus, also its finding of Mr. Patyrak as responsible person of NYTD) because Taxation allegedly violated the statutory Taxpayer Bill of Rights (L. 1992, c. 175, § 44) by failing to provide an opportunity for a post-audit conference. However, the court directed the parties to "conduct an in-person settlement conference with the auditor present within 90 days." The court retained jurisdiction.

The settlement conference did not occur. Taxation stated that it had reached out to schedule a conference, however, counsel for plaintiffs declined to engage in the same. The court thereafter scheduled a trial as to the final determination which affirmed the audited assessments against NYTD.

On the scheduled trial date, the court heard Mr. Patyrak who reiterated the reasons why the audit should be vacated viz., due to the alleged violation of the Taxpayer Bill of Rights because the auditor did not provide a post-audit conference opportunity. The court ruled that it would not consider the testimony because it was an attempt to re-argue what was already decided in the April 5, 2024, Order and as to which no appeal or motion for reconsideration was timely filed. Nor was there any proof of newly discovered evidence to justify revisiting that Order.

However, because that Order had directed a settlement conference, which did not happen, the court provided the parties with this opportunity before proceeding

10

to trial. Although the auditor who had performed the challenged audit was no longer employed at Taxation, her supervising auditor was present at trial. This person had been personally involved in the audit in that she had reviewed the documents that NYTD provided for purposes of the audit, as well as the proposed assessment stemming from the audit, at Taxation's offices in Hackensack. Thus, she personally knew of NYTD's audit, the audit process, and the documents involved.

The parties were unable to reach a settlement. Plaintiffs declined the court's offer to adjourn the trial. The matter then proceeded to trial.

Mr. Patyrak's testimony comprised of the nature of NYTD's business, its operations and his role in the same, NYTD's bankruptcy, closure of the business, the performance of the two audits by Taxation, one pre-bankruptcy and the instant one challenged before this court (all of which were presented to the court in the prior motions for summary judgment, as undisputed facts). He stated that he provided the auditor with the necessary records such as bank statements, invoices, daily sale summaries, and ledgers. He testified to his letters concerning the audit, the lack of a post audit conference, the protests he filed, and the final determination. All of plaintiffs' proffered documents were admitted into evidence without objection (except for some hand-written notes on two letters).

Testimony elicited from Taxation's supervising auditor was as to the audit process and the alleged lack of the post-audit conference. The supervising auditor

testified that she recalled having reviewed NYTD's ledgers and bank records, that there was no pre-audit conference since Mr. Patyrak was in Florida and the business was closed in August of 2014, and that Taxation sent a post-audit conference sheet to Mr. Patyrak in December, but never received a signed copy asking for such a conference. She also stated that the auditor's report is for internal record-keeping purposes, that once the audit is closed, the file is sent to Taxation's billing department (as was done here due to lack of response from Mr. Patyrak), and that after the file is in billing, the audit section no longer is involved in the case.

At the end of plaintiffs' case-in-chief, Taxation moved to dismiss the complaint under R. 4:37-2(b). The court indicated that it would consider the same after briefing on whether NYTD's bankruptcy and the settlement therein of Taxation's claims, barred the imposition of the assessments at issue here.

Taxation filed a brief in this regard on February 27, 2025. It argued that (a) NYTD's bankruptcy did not affect the audit at issue because the assessments were not a "claim" for purposes of bankruptcy, i.e., they were not final since NYTD's time to file a protest, and thereafter, to appeal Taxation's determination to this court under N.J.S.A. 54:49-18 and 54:51A-14(a), was still open. Taxation maintained that its right to payment of the assessed taxes became final only after it issued the final determination on August 10, 2016, by which time NYTD's bankruptcy case had closed; (b) the discharge provisions of Chapter 11 do not apply since NYTD was

effectively liquidated when it converted its case to one under Chapter 7 and sold its sole asset (liquor license); and (c) Mr. Patyrak, as responsible person of NYTD, is personally liable for the assessed sales tax amounts, regardless of NYTD's liability vis-à-vis its bankruptcy.

By letter of March 27, 2025, plaintiffs' counsel advised the court that he had no objections to the conclusions in Taxation's brief, and would not oppose the same.

**ANALYSIS**

*A. Validity of the Audited Assessments*

A taxpayer is statutorily obligated to maintain adequate and accurate books and records (such as sales/purchases, credits, discounts, invoices). N.J.S.A. 54:32B-16. Taxation is statutorily authorized to examine those documents, and if necessary, reconstruct the taxable receipts. N.J.S.A. 54:32B-19.

Taxation's assessments and final determinations are deemed presumptively correct. See generally La Troncal Food Corp. v. Dir., Div. of Taxation, 33 N.J. Tax 435, 456-57 (Tax 2024). A taxpayer therefore has the initial burden to overcome the presumption, and thereafter, has the burden to prove, by a preponderance of the evidence, what the assessment should be. Id. at 457 (citation and internal quotation marks omitted). The proffered evidence should be "definite, positive and certain in quality and quantity." Ibid. (citation and internal quotation marks omitted).

The evidence presented to the court showed that NYTD provided certain books and records to Taxation, Taxation reviewed the same, audited NYTD for SUT and litter tax, and deemed Mr. Patyrak, as responsible person of NYTD, thus, personally liable for audited sales tax liability. What the testimonial or other evidence did <u>not</u> prove was why the audit was improper or incorrect. In its protest letters, NYTD contended that the audit was <u>partially</u> incorrect because the amounts listed by the auditor for "bakery" and "salads" and "beverages/juice" are statutorily nontaxable. <u>See</u> N.J.S.A. 54:32B-3(c)(3)(ii)(B), (C); N.J.A.C. 18:24-12.2 (taxable prepared food does not include "bakery items, including bread, rolls, buns, biscuits, bagels, croissants, pastries, donuts, danish, cakes, tortes, pies, tarts, muffins, bars, cookies, and tortillas" or "food sold in an unheated state by weight or volume as a single item" provided they are "sold without eating utensils"). However, at trial, NYTD did not provide any proof (testimonial or otherwise) to show that the entire amount of food items listed by the auditor, was sold purely as takeout items, thus, should be nontaxable, or as to the alleged amount of non-taxable beverages. Without this, the court has no basis to conclude that Taxation's audit methodology and results therefrom were aberrational, or determine what the appropriate assessment should be. In the same vein, NYTD did not provide any proof (testimonial or otherwise) to establish that the use tax assessment on expenses, or the litter tax assessment, was

14

incorrect or improperly imposed. The court therefore has no choice but to affirm the audited assessments.

*B. Impact of NYTD's Bankruptcy Upon Collectability of the Audited Assessments*

The filing of a bankruptcy petition by a taxpayer does not prevent Taxation from commencing and completing an audit against that taxpayer. See 11 U.S.C. §362(b)(9)(A) - (D) (the "filing of a petition" for bankruptcy "does not operate as a stay . . . of . . . an audit by a governmental unit to determine tax liability" or "the issuance to the debtor by a governmental unit of a notice of tax deficiency," or "a demand for tax returns," or "the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment"); H & H Beverage Distrib. v. Dep't. of Revenue, 850 F.2d 165, 165 (3d Cir. 1988) (taxing authority did not violate the automatic stay when it conducted a sales tax audit of, and issued a notice of audit assessment to, a Chapter 11 debtor).

However, when a Chapter 11 plan is confirmed, the plan terms are binding upon the reorganized debtor and creditors, revests property of the bankruptcy estate in the reorganized debtor, and discharges any claims which arose or is deemed to have arisen prior to the plan's confirmation.

NYTD argues that a major portion of Taxation's audited assessments were barred by the December 16, 2013, Consent Order, and discharged by its December 30, 2013, Chapter 11 plan confirmation.

Taxation argues that since the Bankruptcy Code defines "debt" as a "claim" and a "claim" as a "right to payment," the audited assessments at issue here were not a "debt." Rather, per Taxation, although the auditor's 2014 Notice of Assessment was issued while NYTD's bankruptcy was still pending, it was not final (i.e., collectible as a debt) until Taxation issued a final determination on August 10, 2016. By this time, NYTD's bankruptcy was closed, therefore, Taxation argues, it could not have filed a claim for payment in the bankruptcy court. This means, per Taxation, the audited liability is unaffected by NYTD's bankruptcy.

The court is unpersuaded by Taxation's argument. A "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Thus, a claim "can be . . . merely contingent," and a contingent claim "arises at the time the conduct that causes it occurs, even if the claim is not asserted or does not actually accrue until later." Dold v. Rainbows United, Inc., 547 B.R. 430, 431 (Bankr. D. Kan. 2016). The court therefore examines the audited assessments vis-à-vis NYTD's bankruptcy.

1. Tax Periods Covered by the Consent Order

The Bankruptcy Court's December 16, 2023, Consent Order controls the audited assessments for tax periods up to September 2012. Under that Order,

16

payment by NYTD of the agreed to amount of Taxation's claims ($167,848.90) "will fully satisfy any and all obligations of" NYTD "for taxes up to the" bankruptcy "petition date" of September 27, 2012. The plain language of this Consent Order relieves NYTD of any liability for any New Jersey state tax for any tax period until September 27, 2012. Nothing in the Consent Order permits Taxation to revive any tax claims against NYTD such as a post-plan confirmation audit. Taxation did not reserve a right to keep open (i.e. the right to impose additional audited taxes for) the tax periods either listed in its proofs of claim, or up until September 2012, in the Consent Order. Taxation is bound by the terms of the Consent Order as written. Therefore, Taxation cannot collect sales tax for the fourth quarter of 2010, all four quarters of 2011, and the first three quarters of 2012 from NYTD.

However, the court agrees with Taxation that Mr. Patyrak, as responsible person of NYTD, remains personally liable for sales tax for the above-listed tax periods. The Consent Order applied only to NYTD. Mr. Patyrak did not file for individual bankruptcy (even if he did, he would still be liable for sales tax, which as a trust fund tax, is not dischargeable. See 11 U.S.C. § 523(a)(1)(A)).

2. Assessments for Tax Periods after September 2012

11 U.S.C. § 1141(d)(1)(A) discharges, i.e., frees the debtor from liability for "any debt" which arose prior to a Chapter 11 plan confirmation, and also for a debt

specified in 11 U.S.C. § 502(i), which is a pre-petition priority income or sales tax.[6] The discharge applies whether a creditor files a claim, whether the claim is allowed or whether the creditor objects to the Chapter 11 plan.  11 U.S.C. § 1141(d)(1)(A).

However, the discharge does not apply if (a) the confirmed plan "provides for the liquidation of all or substantially all of the property of the estate;" (b) the "debtor does not engage in business after consummation of the plan;" and (c) the "debtor would be denied a discharge under" Chapter 7 of the Bankruptcy Code (11 USCS § 727(a)), had the debtor filed for bankruptcy under Chapter 7.  11 USCS § 1141(d)(3). "All three elements of § 1141(d)(3) must be established before a Chapter 11 debtor's discharge may be denied."  Torrington Livestock Cattle Co. v. Berg, 423 B.R. 671, 677 (B.A.P. 10th Cir. 2010).

Taxation maintains that the discharge exceptions apply because NYTD liquidated its main asset (liquor license) and ceased operations.  Plus, it notes, prong three of the exception to a Chapter 11 discharge applies since a Chapter 7 discharge applies only to individual debtors.

---

[6]  Under 11 U.S.C. § 502(i), a "claim that does not arise until after the commencement of the case for a tax entitled to priority under" 11 U.S.C. § 507(a)(8) will be treated "as if such claim had arisen" prior to the bankruptcy's filing date. Under 11 U.S.C. § 507(a)(8), a tax "on or measured by income or gross receipts" for which a return is due three years prior to the filing of the bankruptcy petition, is entitled to priority in distribution of the bankruptcy assets.

NYTD's plan was confirmed on December 30, 2013. According to the bankruptcy documents provided to this court, the plan was one of reorganization, not liquidation. Therefore, the exceptions to the discharge may not apply since one of the three conditions is not satisfied.

Further, as to each tax period, the discharge may or may not apply. For instance, the audited sales tax for the fourth quarter of 2012 and for all four quarters of 2013, the use tax for 2013, and the litter tax for 2013, may be dischargeable since they could be considered as pre-confirmation "debt[s]." However, they could equally be considered as non-dischargeable because they are not pre-petition priority taxes under 11 U.S.C. § 502(j). Similarly, the sales tax assessments for the first three quarters of 2014 could be considered as non-dischargeable since the tax periods are post-petition and post-confirmation.[7]

The court holds that it will not decide whether the Chapter 11 discharge applies to the tax periods after the third quarter of 2012 because it lacks subject matter jurisdiction. See Cohen v. Dir., Div. of Taxation, 19 N.J. Tax 58, 64 (Tax 2000) ("Although the Bankruptcy Court does not have exclusive jurisdiction of matters involving dischargeability in bankruptcy" that court "is most qualified to deal with the issue" since "[t]he question of dischargeability is an everyday issue in

---

[7] As noted above, NYTD conceded that "the period from December 20, 2013[,] down to August 25[,] 2014[,] is subject to assessment."

that court which has significant expertise").[8] Notably, NYTD's Chapter 11 Plan provided that "[n]otwithstanding anything in this plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to tax claims except for (i) resolving the amount any tax claims arising prior to confirmation, and (ii) enforcing the discharge provisions of the confirmed plan." The court therefore leaves determination of the discharge issue to the Bankruptcy Court.

That NYTD later converted its bankruptcy to a Chapter 7 proceeding does not require this court to exercise its subject-matter jurisdiction. Cf. Slater v. Dir., Div. of Taxation, 26 N.J. Tax 322, 329-30 (Tax 2012) (since taxpayer's bankruptcy was dismissed, the "effect" was that Taxation's assessment "was neither expunged nor discharged by the Bankruptcy Court" and that "there was nothing within the bankruptcy documents" to show that the bankruptcy proceedings "divested the Tax Court of jurisdiction over the present matter").

---

[8] In that case, the taxpayer first appealed Taxation's gross income tax assessment before the Tax Court, and after Taxation moved for summary judgment, filed for Chapter 7 bankruptcy and obtained a discharge. He then argued that the discharge obviated Taxation's summary judgment motion in the Tax Court action. Cohen, 19 N.J. Tax at 60. The court held that the "receipt of a bankruptcy discharge does not invalidate the Tax Court proceedings. Rather, the issue of dischargeability would arise if the Division moved to collect the taxes at issue. This litigation, instituted by the taxpayer, is obviously not a collection suit against the taxpayer." Id. at 62. Here, Taxation's assessments were post-NYTD's bankruptcy, and Taxation seemingly has every intention of collecting the assessed taxes from NYTD (now non-existent).

Taxation is correct that regardless of the Chapter 11 discharge (and whether that discharge is ineffective because of a Chapter 7 conversion), it has unqualified right to collect the audited sales tax from Mr. Patyrak, who this court held, was a responsible person of NYTD and is thus, personally liable for the same for all the tax periods in the audit. See e.g. In re J.J. Re-Bar Corp., 420 B.R. 496 (B.A.P. 9th Cir. 2009) (corporate debtor's Chapter 11 discharge does not extend to the individual officers, thus, the Internal Revenue Service properly commenced collection of trust fund taxes from those individuals), aff'd, 644 F.3d 952 (9th Cir. 2011).

**CONCLUSION**

The court affirms Taxation's final determination. However, Taxation cannot collect taxes from NYTD for tax periods up to September 27, 2012, pursuant to the December 2013 Consent Order of the Bankruptcy Court. The Bankruptcy Court should decide whether the taxes for periods post September 27, 2012, were discharged due to NYTD's Chapter 11 plan confirmation, especially because it retained jurisdiction to resolve the amount of any tax claims arising prior to confirmation, and to enforce the plan's discharge provisions. Regardless of NYTD's bankruptcy, Mr. Patyrak remains personally liable for the sales tax liability for all the tax periods in the audit.

    /s/ Mala Sundar    
Hon. Mala Sundar, P.J.T.C.
